
FILED
2020 May-13  PM 12:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **AUDREY ALSTON, and**<br>**IOLA GOODSON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: CV-2020-** |
| | ) | |
| **MID-CENTURY INSURANCE**<br>**CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## NOTICE OF REMOVAL

**Exhibit 1 -- State Court Process, Pleadings, Etc.**

6

## ALABAMA SJIS CASE DETAIL



**PREPARED FOR: DAVID BRIGHT**


alacourt.com

County: **47**   Case Number: **CV-2020-900473.00**   Court Action:
Style: **AUDREY ALSTON ET AL V. FARMERS INSURANCE COMPANY**

Real Time

### Case

#### Case Information

| | | |
|---|---|---|
| County: **47-MADISON** | Case Number: **CV-2020-900473.00** | Judge: **CEH:CLAUDE E HUNDLEY III** |
| Style: **AUDREY ALSTON ET AL V. FARMERS INSURANCE COMPANY** | | |
| Filed: **03/30/2020** | Case Status: **ACTIVE** | Case Type: **BAD FAITH/FRAUD/MISR** |
| Trial Type: **JURY** | Track: | Appellate Case: **0** |
| No of Plaintiffs: **2** | No of Defendants: **2** | |

#### Damages

| | | |
|---|---|---|
| Damage Amt: **0.00** | Punitive Damages: **0.00** | General Damages: **0.00** |
| No Damages: | Compensatory Damages: **0.00** | |
| Pay To: | Payment Frequency: | Cost Paid By: |

#### Court Action

| | | |
|---|---|---|
| Court Action Code: | Court Action Desc: | Court Action Date: |
| Num of Trial days: **0** | Num of Liens: **0** | Judgment For: |
| Dispositon Date of Appeal: | Disposition Judge: **:** | Disposition Type: |
| Revised Judgement Date: | Minstral: | Appeal Date: |
| Date Trial Began but No Verdict (TBNV1): | | |
| Date Trial Began but No Verdict (TBNV2): | | |

#### Comments

Comment 1:
Comment 2:

#### Appeal Information

| | | |
|---|---|---|
| Appeal Date: | Appeal Case Number: | Appeal Court: |
| Appeal Status: | Orgin Of Appeal: | |
| Appeal To: | Appeal To Desc: | LowerCourt Appeal Date: |
| Disposition Date Of Appeal: | Disposition Type Of Appeal: | |

#### Administrative Information

| | | |
|---|---|---|
| Transfer to Admin Doc Date: | Transfer Reason: | Transfer Desc: |
| Number of Subponeas: | Last Update: **05/04/2020** | Updated By: **AJA** |

### Parties

### Party 1 - Plaintiff INDIVIDUAL - ALSTON AUDREY

#### Party Information

| | | |
|---|---|---|
| Party: **C001-Plaintiff** | Name: **ALSTON AUDREY** | Type: **I-INDIVIDUAL** |
| Index: **D FARMERS INSU** | Alt Name: | JID: **CEH** |
| Address 1: **4003 SEWALL DRIVE SW** | Hardship: **No** | |
| | Phone: **(256) 603-9658** | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Address 2: | | | | | | | |
| City: | **HUNTSVILLE** | State: | **AL** | Zip: | **35805-0000** | Country: | **US** |
| SSN: | **XXX-XX-X014** | DOB: | **11/14/1952** | Sex: | **F** | Race: | |

## Court Action

| | | | | | |
|---|---|---|---|---|---|
| Court Action: | | | | Court Action Date: | |
| Amount of Judgement: | $0.00 | Court Action For: | | Exemptions: | |
| Cost Against Party: | $0.00 | Other Cost: | $0.00 | Date Satisfied: | |
| Comment: | | | | Arrest Date: | |
| Warrant Action Date: | | Warrant Action Status: | | Status Description: | |

## Service Information

| | | | | | |
|---|---|---|---|---|---|
| Issued: | Issued Type: | Reissue: | | Reissue Type: | |
| Return: | Return Type: | Return: | | Return Type: | |
| Served: | Service Type | Service On: | | Served By: | |
| Answer: | Answer Type: | Notice of No Service: | | Notice of No Answer: | |

## Attorneys

| Number | Attorney Code | Type of Counsel | Name | Email | Phone |
|---|---|---|---|---|---|
| Attorney 1 | HOW081 | | HOWIE MITCHELL JOHN | MHOWIE@MITCHELLHOWIE.COM | (256) 533-8074 |

## Party 2 - Plaintiff INDIVIDUAL - GOODSON IOLA

### Party Information

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Party: | **C002-Plaintiff** | Name: | **GOODSON IOLA** | | | Type: | **I-INDIVIDUAL** |
| Index: | **D FARMERS INSU** | Alt Name: | | | | JID: | **CEH** |
| Address 1: | **80 IOLA WALLACE YOUNG RD** | | | Hardship: | **No** | Phone: | |
| Address 2: | | | | Phone: | **(256) 000-0000** | | |
| City: | **BOLIGEE** | State: | **AL** | Zip: | **35443-0000** | Country: | **US** |
| SSN: | **XXX-XX-X999** | DOB: | **06/04/1931** | Sex: | **F** | Race: | |

## Court Action

| | | | | | |
|---|---|---|---|---|---|
| Court Action: | | | | Court Action Date: | |
| Amount of Judgement: | $0.00 | Court Action For: | | Exemptions: | |
| Cost Against Party: | $0.00 | Other Cost: | $0.00 | Date Satisfied: | |
| Comment: | | | | Arrest Date: | |
| Warrant Action Date: | | Warrant Action Status: | | Status Description: | |

## Service Information

| | | | | | |
|---|---|---|---|---|---|
| Issued: | Issued Type: | Reissue: | | Reissue Type: | |
| Return: | Return Type: | Return: | | Return Type: | |
| Served: | Service Type | Service On: | | Served By: | |
| Answer: | Answer Type: | Notice of No Service: | | Notice of No Answer: | |

## Attorneys

| Number | Attorney Code | Type of Counsel | Name | Email | Phone |
|--------|---------------|------------------|------|-------|-------|
| Attorney 1 | HOW081 | | HOWIE MITCHELL JOHN | MHOWIE@MITCHELLHOWIE.COM | (256) 533-8074 |

### Party 3 - Defendant BUSINESS - FARMERS INSURANCE COMPANY

#### Party Information

| | | | | | |
|---|---|---|---|---|---|
| Party: | D001-Defendant | Name: | FARMERS INSURANCE COMPANY | Type: | B-BUSINESS |
| Index: | C ALSTON AUDRE | Alt Name: | | Hardship: No | JID: CEH |
| Address 1: | P.O. BOX 268994 | | | Phone: | (205) 909-1284 |
| Address 2: | | | | | |
| City: | OKLAHOMA CITY | State: | OK | Zip: | 73126-0000 Country: US |
| SSN: | XXX-XX-X999 | DOB: | | Sex: | Race: |

#### Court Action

| | | | | | |
|---|---|---|---|---|---|
| Court Action: | | | | Court Action Date: | |
| Amount of Judgement: | $0.00 | Court Action For: | | Exemptions: | |
| Cost Against Party: | $0.00 | Other Cost: | $0.00 | Date Satisfied: | |
| Comment: | | | | Arrest Date: | |
| Warrant Action Date: | | Warrant Action Status: | | Status Description: | |

#### Service Information

| | | | | | |
|---|---|---|---|---|---|
| Issued: | 03/30/2020 | Issued Type: | C-CERTIFIED MAIL | Reissue: | Reissue Type: |
| Return: | | Return Type: | | Return: | Return Type: |
| Served: | 04/06/2020 | Service Type | C-CERTIFIED MAIL | Service On: | Served By: |
| Answer: | | Answer Type: | | Notice of No Service: | Notice of No Answer: |

#### Attorneys

| Number | Attorney Code | Type of Counsel | Name | Email | Phone |
|--------|---------------|------------------|------|-------|-------|
| Attorney 1 | CLE022 | | CLEMENT KORI LYNN | CLEM@HARELAW.COM | (205) 980-4733 |

### Party 4 - Defendant BUSINESS - MID CENTURY INSURANCE COMPANY

#### Party Information

| | | | | | |
|---|---|---|---|---|---|
| Party: | D002-Defendant | Name: | MID CENTURY INSURANCE COMPANY | Type: | B-BUSINESS |
| Index: | C ALSTON AUDRE | Alt Name: | | Hardship: No | JID: CEH |
| Address 1: | 641 SOUTH LAWRENCE STREET | | | Phone: | (256) 000-0000 |
| Address 2: | | | | | |
| City: | MONTGOMERY | State: | AL | Zip: | 36104-0000 Country: US |
| SSN: | XXX-XX-X999 | DOB: | | Sex: | Race: |

## Court Action

| | | | |
|---|---|---|---|
| Court Action: | | Court Action Date: | |
| Amount of Judgement: **$0.00** | Court Action For: | Exemptions: | |
| Cost Against Party: **$0.00** | Other Cost: **$0.00** | Date Satisfied: | |
| Comment: | | Arrest Date: | |
| Warrant Action Date: | Warrant Action Status: | Status Description: | |

## Service Information

| | | | |
|---|---|---|---|
| Issued: **05/04/2020** | Issued Type: **F-CERTIFIED MAIL BY FIL** Reissue: | Reissue Type: | |
| Return: | Return Type: | Return: | Return Type: |
| Served: | Service Type | Service On: | Served By: |
| Answer: | Answer Type: | Notice of No Service: | Notice of No Answer: |

## Attorneys

| Number | Attorney Code | Type of Counsel | Name | Email | Phone |
|---|---|---|---|---|---|
| Attorney 1 | 000000 | | PRO SE | | |

## Financial

### Fee Sheet

| Fee Status | Admin Fee | Fee Code | Payor | Payee | Amount Due | Amount Paid | Balance | Amount Hold | Garnish Party |
|---|---|---|---|---|---|---|---|---|---|
| ACTIVE | N | AOCC | C001 | 000 | $7.05 | $7.05 | $0.00 | $0.00 | 0 |
| ACTIVE | N | CONV | C001 | 000 | $0.00 | $29.32 | $0.00 | $0.00 | 0 |
| ACTIVE | N | CVAP | C001 | 000 | $100.00 | $100.00 | $0.00 | $0.00 | 0 |
| ACTIVE | N | CV05 | C001 | 000 | $481.00 | $481.00 | $0.00 | $0.00 | 0 |
| ACTIVE | N | JDMD | C001 | 000 | $100.00 | $100.00 | $0.00 | $0.00 | 0 |
| ACTIVE | N | VADM | C001 | 000 | $45.00 | $45.00 | $0.00 | $0.00 | 0 |
| | | | | Total: | $733.05 | $762.37 | -$29.32 | $0.00 | |

### Financial History

| Transaction Date | Description | Disbursement Accoun | Transaction Batch | Receipt Number | Amount | From Party | To Party | Money Type | Admin Fee | Reason | Attorney | Operator |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/30/2020 | CREDIT | CONV | 2020128 | 5792340 | $29.32 | C001 | 000 | | N | | | LIB |
| 03/30/2020 | RECEIPT | AOCC | 2020128 | 5792330 | $7.05 | C001 | 000 | | N | | | LIB |
| 03/30/2020 | RECEIPT | CVAP | 2020128 | 5792350 | $100.00 | C001 | 000 | | N | | | LIB |
| 03/30/2020 | RECEIPT | CV05 | 2020128 | 5792360 | $481.00 | C001 | 000 | | N | | | LIB |
| 03/30/2020 | RECEIPT | JDMD | 2020128 | 5792370 | $100.00 | C001 | 000 | | N | | | LIB |
| 03/30/2020 | RECEIPT | VADM | 2020128 | 5792380 | $45.00 | C001 | 000 | | N | | | LIB |

## Case Action Summary

| Date: | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 3/30/2020 | 1:37 PM | ORIG | ORIGIN: INITIAL FILING          (AV01) | AJA |
| 3/30/2020 | 1:37 PM | FILE | FILED THIS DATE: 03/30/2020          (AV01) | AJA |
| 3/30/2020 | 1:37 PM | STAT | CASE ASSIGNED STATUS OF: ACTIVE          (AV01) | AJA |
| 3/30/2020 | 1:37 PM | EORD | E-ORDER FLAG SET TO "Y"          (AV01) | AJA |
| 3/30/2020 | 1:37 PM | SCAN | CASE SCANNED STATUS SET TO: N          (AV01) | AJA |
| 3/30/2020 | 1:37 PM | ASSJ | ASSIGNED TO JUDGE: CLAUDE E HUNDLEY III   (AV01) | AJA |

| 3/30/2020 | 1:37 PM | TDMJ | JURY TRIAL REQUESTED                        (AV01) | AJA |
|-----------|---------|------|-----------------------------------------------------|-----|
| 3/30/2020 | 1:37 PM | C001 | C001 PARTY ADDED: ALSTON AUDREY            (AV02) | AJA |
| 3/30/2020 | 1:37 PM | C001 | C001 E-ORDER FLAG SET TO "Y"               (AV02) | AJA |
| 3/30/2020 | 1:37 PM | C001 | INDIGENT FLAG SET TO: N                    (AV02) | AJA |
| 3/30/2020 | 1:37 PM | C001 | LISTED AS ATTORNEY FOR C001: HOWIE MITCHELL JOHN | AJA |
| 3/30/2020 | 1:37 PM | C002 | C002 PARTY ADDED: GOODSON IOLA             (AV02) | AJA |
| 3/30/2020 | 1:37 PM | C002 | LISTED AS ATTORNEY FOR C002: HOWIE MITCHELL JOHN | AJA |
| 3/30/2020 | 1:37 PM | C002 | INDIGENT FLAG SET TO: N                    (AV02) | AJA |
| 3/30/2020 | 1:37 PM | C002 | C002 E-ORDER FLAG SET TO "Y"               (AV02) | AJA |
| 3/30/2020 | 1:37 PM | D001 | INDIGENT FLAG SET TO: N                    (AV02) | AJA |
| 3/30/2020 | 1:37 PM | D001 | LISTED AS ATTORNEY FOR D001: PRO SE        (AV02) | AJA |
| 3/30/2020 | 1:37 PM | D001 | D001 E-ORDER FLAG SET TO "Y"               (AV02) | AJA |
| 3/30/2020 | 1:37 PM | D001 | CERTIFIED MAI ISSUED: 03/30/2020 TO D001   (AV02) | AJA |
| 3/30/2020 | 1:37 PM | D001 | D001 PARTY ADDED: FARMERS INSURANCE        (AV02) | AJA |
| 3/30/2020 | 1:38 PM | ECOMP | COMPLAINT E-FILED. | HOW081 |
| 3/30/2020 | 2:05 PM | STYL | AUDREY ALSTON ET AL V. FARMERS INSURANCE   (AV01) | KAC |
| 3/30/2020 | 2:05 PM | D001 | D001 NAME CHANGED FROM: FARMERS INSURANCE  (AV02) | KAC |
| 3/30/2020 | 2:31 PM | ESCAN | SCAN - FILED 3/30/2020 - SUMMONS ISSUED | KAC |
| 4/9/2020 | 1:12 PM | D001 | SERVICE OF CERTIFIED MAI ON 04/06/2020 FOR D001 | MAM |
| 4/9/2020 | 1:14 PM | ESERC | SERVICE RETURN | MAM |
| 5/4/2020 | 10:51 AM | EMOT | D001-MOTN TO DIS. PURS. TO RULE 12(B) FILED. | CLE022 |
| 5/4/2020 | 10:52 AM | D001 | LISTED AS ATTORNEY FOR D001: CLEMENT KORI LYNN | KAC |
| 5/4/2020 | 10:54 AM | EMOT | D001-MOTN TO DIS. PURS. TO RULE 12(B) /DOCKETED | KIC |
| 5/4/2020 | 4:54 PM | D002 | D002 PARTY ADDED: MID CENTURY INSURANCE COMPANY | AJA |
| 5/4/2020 | 4:54 PM | D002 | INDIGENT FLAG SET TO: N                    (AV02) | AJA |
| 5/4/2020 | 4:54 PM | D002 | LISTED AS ATTORNEY FOR D002: PRO SE        (AV02) | AJA |
| 5/4/2020 | 4:54 PM | D002 | CERT MAIL-FIL ISSUED: 05/04/2020 TO D002   (AV02) | AJA |
| 5/4/2020 | 4:54 PM | D002 | D002 E-ORDER FLAG SET TO "Y"               (AV02) | AJA |
| 5/4/2020 | 4:55 PM | EAMEN | AMENDED COMPLAINT E-FILED. | HOW081 |

## Images

| Date | Doc# | Title | Description | Pages |
|------|------|-------|-------------|-------|
| 3/30/2020 1:38:22 PM | 1 | CIVIL_COVER_SHEET | CIRCUIT COURT - CIVIL CASE | 1 |
| 3/30/2020 1:38:22 PM | 2 | COMPLAINT | | 4 |
| 3/30/2020 1:38:43 PM | 3 | COMPLAINT - TRANSMITTAL | E-NOTICE TRANSMITTALS | 2 |
| 3/30/2020 1:38:44 PM | 4 | COMPLAINT - SUMMONS | E-NOTICE TRANSMITTALS | 1 |
| 3/30/2020 2:31:37 PM | 5 | SUMMONS ISSUED | D001 | 1 |
| 4/9/2020 1:13:58 PM | 6 | SERVICE RETURN | SERVICE RETURN | 2 |
| 4/9/2020 1:14:06 PM | 7 | SERVICE RETURN - TRANSMITTAL | E-NOTICE TRANSMITTALS | 1 |
| 5/4/2020 10:51:26 AM | 8 | MOTION_COVER_SHEET | Motion Cover Sheet | 1 |
| 5/4/2020 10:51:27 AM | 9 | MOTION | Motion to Dismiss by Farmers | 37 |
| 5/4/2020 10:51:32 AM | 10 | MOTION - TRANSMITTAL | E-NOTICE TRANSMITTALS | 3 |
| 5/4/2020 4:55:44 PM | 11 | AMENDED COMPLAINT | Plaintiffs' First Amended Complaint against Mid-Century Insurance Company | 4 |
| 5/4/2020 4:55:48 PM | 12 | COMPLAINT - TRANSMITTAL | E-NOTICE TRANSMITTALS | 3 |
| 5/4/2020 4:55:49 PM | 13 | COMPLAINT - SUMMONS | E-NOTICE TRANSMITTALS | 1 |

*END OF THE REPORT*

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>47-CV-2020-900473.00 |
|---|---|---|

## IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA
## AUDREY ALSTON ET AL V. FARMERS INSURANCE COMPANY

**NOTICE TO:** MID CENTURY INSURANCE COMPANY, 641 SOUTH LAWRENCE STREET, MONTGOMERY, AL 36104

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), MITCHELL JOHN HOWIE ,

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: 102 SOUTH SIDE SQUARE, HUNTSVILLE, AL 35801 .

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of ALSTON AUDREY

pursuant to the Alabama Rules of the Civil Procedure.                *[Name(s)]*

| 05/04/2020 | /s/ DEBRA KIZER | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.     /s/ MITCHELL JOHN HOWIE

*(Plaintiff's/Attorney's Signature)*

## RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____ .

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,

*(Name of Person Served)*                     *(Name of County)*

Alabama on _____ .

*(Date)*

_____     _____     _____

*(Type of Process Server)*          *(Server's Signature)*              *(Address of Server)*

_____     _____

*(Server's Printed Name)*          *(Phone Number of Server)*

DOCUMENT 11

ELECTRONICALLY FILED
5/4/2020 4:55 PM
47-CV-2020-900473.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

## IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

| | |
|---|---|
| AUDREY ALSTON and | ) |
| IOLA GOODSON | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| VS. | )    CIVIL ACTION NO.: CV-20-900473 |
| | ) |
| | ) |
| MID-CENTURY | ) |
| INSURANCE COMPANY, | ) |
| Defendant. | ) |

### FIRST AMENDED COMPLAINT

COMES NOW AUDREY ALSTON and IOLA GOODSON, Plaintiffs and state the following cause of action:

### GENERAL ALLEGATIONS

1. Plaintiffs, AUDREY ALSTON and IOLA GOODSON (hereinafter "Ms. Alston" or "Plaintiffs"), are residents of Madison County, Alabama and are over the age of nineteen (19) years.[1]

2. Defendant, MID-CENTURY INSURANCE COMPANY, is a corporation, registered and doing business in Madison County, Alabama, with their registered agent having an address of 641 South Lawrence Street, Montgomery, Al, 36104.

3. Plaintiffs contracted with MID-CENTURY INSURANCE COMPANY to issue an automobile insurance policy in Madison County, Alabama. The Plaintiffs faithfully paid all premiums required under the contract and otherwise performed Plaintiffs' obligations under the contract.

4. On or about January 26th, 2018, the Plaintiff, AUDREY ALSTON, was traveling on Triana Boulevard in Madison County, Alabama, when the tortfeasor, Tiarra Reed (***who has already settled for policy limits and for which the Defendant waived their right to subrogation***), failed to yield the right of way and struck the vehicle in which Plaintiff, AUDREY ALSTON, was driving causing her severe personal injuries and damage to her automobile.

5. As a proximate consequence of said negligence and/or wantonness of the Tortfeasor, Tiarra Reed, Ms. Alston suffered physical injuries, physical pain and mental anguish, lost wages, lost employment, permanent scarring and her car was a total loss.

---

[1] Ms. Goodson is the mother of Ms. Alston and the primary insured under the policy and Ms. Alston is an additional insured under the policy.

DOCUMENT 11

6. As a further proximate consequence of said negligence, Ms. Alston was caused to incur medical expenses in an effort to heal and treat the injuries she had and lost additional wages and her employment.

7. Plaintiffs' insurance company, MID-CENTURY INSURANCE COMPANY has failed to offer to pay the damage from the uninsured motorist after numerous written notices and telephone calls to MID-CENTURY INSURANCE COMPANY to adequately pay Ms. Alston for her losses.

8. At the time and place of the wreck complained of, Ms. Alston was covered under a policy of insurance issued by MID-CENTURY INSURANCE COMPANY, insuring herself against injury and damage caused by an uninsured/underinsured motorist.

9. Ms. Alston suffered injury, loss of enjoyment of life, lost wages, lost her employment and additional damages as a proximate result of the negligence and/or wantonness of tortfeasor, Tiarra Reed, and is therefore entitled to recover uninsured/underinsured motorist benefits.

10. As of the date of this lawsuit, MID-CENTURY INSURANCE COMPANY has refused to adequately pay Ms. Alston for the bodily injuries she has suffered and the compensatory damages she is due under the UIM policy with Mid-Century Insurance.

## COUNT 1-BREACH OF CONTRACT

11. The Plaintiffs reallege and incorporate herein by reference Paragraphs 1-10 above.

12. The automobile insurance policy issued by MID-CENTURY'S INSURANCE POLICY to Plaintiffs in consideration of premiums paid constituted a contract pursuant to which Plaintiffs were entitled to Uninsured/Underinsured Motorist coverage in accordance with Ala. Code Section 32-7-23.

13. The denial of Ms. Alston's claim contravened the express terms of the insurance contract and Alabama law and thus constituted a bad faith breach of the contract.

## COUNT II-BAD FAITH-FAILURE TO PAY

14. The Plaintiffs reallege and incorporate herein by reference Paragraphs 1-13 above.

15. After counsel for Ms. Alston made MID-CENTURY INSURANCE COMPANY aware of the policy and made demand for payment, MID-CENTURY INSURANCE COMPANY failed to make an adequate effort to investigate the merits of the claim by failing to admit her lost wages and medical bills of Fifteen Thousand Six Hundred and Ninety-Seven and 98/100 Dollars ($15,697.98.)

16. Had MID-CENTURY INSURANCE COMPANY adequately investigated the claim, it would have discovered that Plaintiffs have a valid claim in accordance with the facts, the policy, and the law in Alabama and that MID-CENTURY INSURANCE COMPANY was

liable well in excess of Fifteen Thousand Six Hundred and Ninety-Seven and 98/100 Dollars ($15,697.98.)

17. The failure by MID-CENTURY INSURANCE COMPANY to adequately investigate the claim constituted a willful and intentional violation of good faith and fair dealing.

18. Ms. Alston alleges that MID-CENTURY INSURANCE COMPANY knew or should have known that they were liable well in excess of the Fifteen Thousand Six Hundred and Ninety-Seven and 98/100 Dollars ($15,697.98) pursuant to the underinsured motorist insurance coverage for damages but have failed to pay for almost two years.

19. MID-CENTURY INSURANCE COMPANY'S apparent reliance on the contract provisions without further investigation was a bad faith denial of the claim as evidenced by their refusal to offer an amount adequate enough to compensate Ms. Alston for medical bills, lost wages, and loss of employment and pain and suffering.

## COUNT III-CLAIM FOR UNINSURED/UNDERINSURED MOTORIST (UIM) BENEFITS DUE UNDER POLICY

20. The Plaintiffs reallege and incorporate herein by reference Paragraphs 1-19 above as if fully set out herein.

21. That prior to said automobile collision the Plaintiffs purchased an automobile insurance policy (or were a covered insured) providing for uninsured and underinsured motorist coverage and other coverage from the Defendant, MID-CENTURY INSURANCE COMPANY, a mutual insurance company, or corporation.

22. Accordingly, the Defendant owes the Plaintiffs uninsured or underinsured benefits and/or other benefits according to the terms and conditions of said policy, the laws of the State of Alabama and the liability of the Tortfeasor.

23. Plaintiffs have complied with the conditions precedent contained in said contract of insurance. The Plaintiffs claim from Defendant the sums the Plaintiffs are entitled to pursuant to said policy and Plaintiffs demand judgment against the Defendant in an amount as deemed appropriate under the circumstances, plus the costs of this action.

## DAMAGES

24. Ms. Alston has suffered economic damages as a result of the Defendant's conduct. She requests that the fact finder award appropriate actual damages to compensate her for her loss under the policy including the actual cash amount set forth in the policy plus interest.

25. Ms. Alston further requests punitive damages for MID-CENTURY INSURANCE COMPANY'S bad faith failure to pay under the policy. Punitive damages are appropriate to punish MID-CENTURY INSURANCE COMPANY for its reprehensible conduct and to deter future insurance companies from engaging in similar misconduct. Ms. Alston requests

all other damages supported under the law including but not limited to pre-judgment and post-judgment interest, costs of court, and all other damages supported by the evidence and the law.

WHEREFORE, Plaintiffs request One hundred thousand dollars ($100,000.00) (which is the policy limits amount of underinsured motorist insurance coverage provided for in the insurance contract) in compensatory damages and requests such punitive damages as justice may require.

## JURY DEMAND

### *The Plaintiffs hereby make their demand for a trial by jury of all the issues in this case.*

Respectfully Submitted,

*/S/ Mitchell J. Howie*
Mitchell J. Howie
Attorney for Plaintiffs
102 South Side Square
Huntsville, Al 35801
Bar #: ASB-6533-I60H
Phone #: 256-533-8074
mhowie@mitchellhowie.com

## CERTIFICATE OF SERVICE

I hereby certify that I have caused the following to be served by process server on all necessary parties, and/or by certified mail, and/or served a copy of the foregoing upon all necessary parties by electronic filing through AlaFile and/or by e-mail on May 4th, 2020

Respectfully Submitted,

*/S/ Mitchell J. Howie*
Mitchell J. Howie


ELECTRONICALLY FILED
5/4/2020 10:51 AM
47-CV-2020-900473.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

## IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

| | |
|---|---|
| **AUDREY ALSTON, and**<br>**IOLA GOODSON,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Civil Action No.: CV-2020-900473** |
| | ) |
| **FARMERS INSURANCE COMPANY** | ) **ORAL ARGUMENT REQUESTED** |
| | ) |
| **Defendant.** | ) |

### DEFENDANT'S MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT

Defendant Farmers Insurance Company ("Farmers" and/or "Defendant"), pursuant to Rule 12(b)(6), Ala. R. Civ. P., files this motion to dismiss Plaintiffs' Complaint [Doc. 2] in the above-styled action. As grounds, Farmers submits that the Complaint fails to state any claim upon which relief can be granted.

### BACKGROUND

1.     Plaintiffs allege claims against Farmers[1] for (a) breach of an automobile insurance policy (i.e. breach of contract) and (b) bad faith refusal to pay underinsured motorist ("UIM") benefits under that policy in an amount plaintiffs believe is required. [Doc. 2, ¶¶ 11-19]

2.     According to the Complaint, the insurance policy at issue is an automobile insurance policy issued to Plaintiff Iola Goodson (the "Policy").[2] [Doc. 2]

3.     Plaintiffs alleged breach of contract and bad faith claims relate to UIM claims under the Policy presented after a January 26, 2018 automobile accident in which Plaintiff Audrey Alston was allegedly injured. [Doc. 2, ¶¶ 4-5] Plaintiffs do not allege a claim for UIM benefits against Farmers. [Doc. 2]

---

[1] In the state of Alabama there is no such entity that issues insurance policies, this is merely a trade name.
[2] Because the Policy's subject matter is directly referenced in the complaint, the attachment of the Policy does not convert this motion to dismiss to a motion for summary judgment. <u>Donoghue v. Am. Nat'l Ins. Co.</u>, 838 So. 2d 1032, 1036 (Ala. 2002).

4.     Mid-Century Insurance Company issued the Policy, not Farmers. See Exhibit 1, Declarations Page.

**ARGUMENT**

**I.     Because It Is Not A Party To The Policy, Farmers Cannot Be Liable For Breach Of Contract Or Bad Faith As A Matter Of Fact And Law.**

**A.     Plaintiffs fail to plead a plausible breach of contract claim against Farmers.**

"A contract of insurance, like other contracts, is governed by the general rules of contracts." Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So. 2d 687, 691 (Ala. 2001). The material elements necessary to establish a cause of action for breach of contract under Alabama law are: "(1) a valid contract binding the parties; (2) the plaintiff['s] performance under the contract; (3) the defendant's non-performance; and (4) resulting damages." Reynolds Metals Co. v. Hill, 825 So. 2d 100, 105-106 (Ala. 2002) (citing State Farm Fire & Cas. Co. v. Slade, 747 So. 2d 293, 303 (Ala. 1999)).

In the breach of contract claim, Plaintiffs allege that Farmers "has failed to offer to pay the damage from the uninsured motorist [… or] to adequately pay [Plaintiff] Alston for her losses." [Doc. 2, ¶ 7] The Complaint goes on to state that Plaintiff "Alston was covered under a policy of insurance issued by Farmers Insurance Company." However, the policy in question was issued by Mid-Century Insurance Company, not Farmers. The Complaint, therefore, fails to plead that a contract exists between plaintiffs and Farmers. [Doc. 2, ¶ 7] See also Exhibit 1, Declarations Page. Thus, Plaintiffs fail to plead a plausible claim for breach of contract against Farmers, and the breach of contract claim against it is due to be dismissed.

**B.     Plaintiffs fail to plead a plausible bad faith failure to pay claim against Farmers.**

2

The tort of bad faith refusal to pay an insurance claim has four elements and a conditional fifth element:

- breach of the insurance contract;
- the insurer's refusal to pay the claim;
- the absence of an arguable or debatable reason for that refusal;
- the insurer's knowledge of such absence; and
- if the intentional failure to determine the existence of an arguable or debatable basis is relied upon, the insured must prove the insurer's intentional failure to determine whether there is an arguable or debatable reason to refuse the claim.

State Farm Fire & Cas. Co. v. Brechbill, 144 So. 3d 248, 259 (Ala. 2013). **Under Alabama law, the tort of bad faith is a cognizable cause of action only against "a party to that insurance contract."** Ligon Furniture Co., Inc. v. O.M. Hughes Ins., Inc., 51 So. 2d 283, 285 (Ala. 1989).

Plaintiffs attempt to present a bad faith failure to pay claim against Farmers by alleging that it has failed to adequately investigate the claim which constitutes a willful and intentional violation of good faith and fair duty. [Doc. 2, ¶ 17] But, as pleaded in the Complaint, the Policy was issued and underwritten by Mid-Century Insurance Company, not Farmers. Because (1) the Complaint alleges facts making it impossible for Farmers to be a party to the Policy and (2) a bad faith claim is a cognizable cause of action **only** against a party to an insurance contract, Ligon Furniture Co., Inc., 51 So. 2d at 285, Plaintiffs fail to allege a plausible claim for bad faith against Farmers. Plaintiffs' bad faith claim, therefore, is due to be dismissed.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Farmers requests that the Court enter an order dismissing the Complaint as to it in its entirety with prejudice.

/s/ Kori L. Clement
Kori L. Clement (CLE022)
Attorney for Farmers Insurance
Company

OF COUNSEL:
1601 Providence Park
Birmingham, Alabama 35242
Telephone: (205) 980-4733
Email: clem@harelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the AlaFile system, which will send notification of such filing to the following on this the 4th day of May, 2020:

Mitchell J. Howie, Esquire
102 Southside Square
Huntsville, Alabama 35801-4225
*Attorney for Plaintiffs*

/s/Kori L. Clement
OF COUNSEL

4

DOCUMENT 9

## IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

| | | |
|---|---|---|
| **AUDREY ALSTON, and** | ) | |
| **IOLA GOODSON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: CV-2020-900473** |
| | ) | |
| **FARMERS INSURANCE COMPANY** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT

## EXHIBIT 1 - POLICY

DOCUMENT 9



# FARMERS
## INSURANCE

Farmers Insurance
PO Box 2602
Grand Rapids MI
49501-2602

April 10, 2020

Insured: Iola Goodson
Policy Number: 191715613
Claim Number: 3010219815-1
Loss Date: 1/26/2018
Policy Term: 6    Months

☐ Attached is a certified true copy of the original information sent to the insured.

☐ Attached is a certified true copy of the original declarations page, policyback and endorsements.

☒ Attached is a certified true copy of the original declaration page. The attached policyback and endorsements did not mail with this declaration page, but are included as requested.

☐ Attached is a certified true copy of the original declaration page only.

☐ Attached is a certified reconstructed copy of the declaration page only.

☐ Attached is a certified reconstructed copy of the declaration page, policyback and endorsements.

☐ Attached is a certified reconstructed copy of the cancellation.

☐ Attached is a certified true copy of the original cancellation.

Any additional Declaration Sheet(s) included with these documents labeled as "change or change-misc." may reflect a mid-term change in the policy and therefore a time period of less than the original policy term, however the dates reflect the most current policy information on file, up to and including the date of loss for the above-referenced claim.

DOCUMENT 9

# **Auto Insurance** Declaration Page



**FARMERS**
INSURANCE

| | |
|---|---|
| **Policy Number:** | **19171-56-13** |
| *Effective:* | 1/2/2018 12:01 AM |
| *Expiration:* | 3/6/2018 12:01 AM |
| *Named Insured(s):* | Iola Goodson |
| | 82 Iola Wallace Young Rd |
| | Boligee, AL 35443-3233 |
| *e-mail Address(es):* | dryalston@yahoo.com |
| *Underwritten By:* | Mid-Century Insurance Company |
| | 6301 Owensmouth Ave. |
| | Woodland Hills, CA 91367 |

### *Premiums*

| | |
|---|---|
| *Full-term Premium (excluding fees)* | $668.30 |
| Prorated Premium (1/2/2018 - 3/6/2018) | $12.32 |
| ▶ **Total for this Transaction** | **$12.32** |

**Your policy premium includes a Total Discount Savings of $418.50**

**This is not a bill.**
Your bill with the amount due will be mailed separately.

## Household Drivers

| Name | Driver Status | Name | Driver Status |
|---|---|---|---|
| Iola Goodson | Covered | Audrey Alston | Covered |

## Vehicle Information

| Veh. # | Year/Make/Model/VIN | Coverage | Deductible | Limit |
|---|---|---|---|---|
| 1 | 2003 Mercedes Benz M Class 4D 4X4 ML350 | Comprehensive: | $500 | |
| | 4JGAB57E93A427541 | Collision: | $500 | |

## Vehicle Level Coverage Items

| | | Premiums by Vehicle |
|---|---|---|
| **Coverage** | **Limits** (applicable to all vehicles) | **Vehicle 1** |
| Bodily Injury Liability | $100,000 each person $300,000 each accident | $132.50 |
| Property Damage Liability | $250,000 each accident | $179.80 |
| Medical Coverage | | Not Covered |
| Comprehensive | | $59.90 |
| Collision | | $156.50 |
| Towing and Road Service | $150 each accident | $7.00 |
| Rental Reimbursement | $50 per day/ $1,500 max | $35.20 |
| Glass Deductible Buyback | | $7.10 |

---

**farmers.com**      **Policy No. 19171-56-13**

**Questions?**
Call your agent Justin T Terry at (205) 352-2335 or email jterry@farmersagent.com

**Manage your account:**
Go to www.farmers.com to access your account any time!

56-6176   1st Edition 8-16     1/3/2018

DOCUMENT 9

## Declaration Page (continued)

### Policy Level Coverage Items

| Coverage | Limits (for all vehicles) | Per Policy |
|---|---|---|
| Uninsured Motorist | $100,000 each person | $90.30 |
| | $300,000 each accident | |

▶ **Full-term Premium** **$668.30**

### Discounts

| Discount Type | Applies to Vehicle(s) | Discount Type | Applies to Vehicle(s) |
|---|---|---|---|
| Auto/Home | 1 | Homeownership | 1 |
| EFT | 1 | Good Payer | 1 |
| ePolicy | 1 | Safe Driver | 1 |

▶ **Total Discount Savings** **$418.50**

### Policy and Endorsements

This section lists the policy form number and any applicable endorsements that make up your insurance contract. Any endorsements that you have purchased to extend coverage on your policy are also listed in the coverages section of this declarations document: 56-5664 1st ed.; J6962 2nd ed.; J6961 2nd ed.

### Other Information

- Vehicle 1 - Deductible reduced to $100 for glass loss.
- Vehicle 1 - Deductible waived if glass repaired rather than replaced.
- Farmers Friendly Reviews are a great way to make sure you are receiving all the discounts for which you qualify, and identify any potential gaps in coverage. Contact your agent to learn more about the policy discounts, coverage options, and other product offerings that may be available to you.

**farmers.com**    **Policy No. 19171-56-13**    **Questions?** Call your agent Justin T Terry at (205) 352-2335 or email jterry@farmersagent.com    **Manage your account:** Go to www.farmers.com to access your account any time!

56-6176   1st Edition   8-16                                                                    Page 2 of 3

## Declaration Page (continued)

### *Information on Additional Fees

The "Fees" stated in the "Premium/Fees" section on the front apply on a per-policy, not an account basis. The following additional fees also apply:

1. Accounts with one or more policy(ies) billing the first installment of a renewal will not be charged a service charge.

   **Single Accounts (1-Pay, 2-Pay, and 4-Pay accounts.):**
   - For payment plans scheduling 100% of the term premium at new business / renewal: **$0.00**
   - For recurring Electronic Funds Transfer (EFT) and enrolled in online billing (paperless): **$0.00**
   - For recurring EFT plans not enrolled in online billing (paperless): **$2.00**
   - For all other payment plans: **$5.00**

   **Monthly Accounts:** Service Charge based on total annualized premium for all active policies (Single and Multi-policy accounts):
   - $600 or greater (Non-EFT): **$5.00** (applied per account)
   - $100.00 to $599.00 (Non-EFT): **$2.00** (applied per account)

   - $100.00 and greater (EFT): **$2.00** (applied per account)
   - $99.99 or less (EFT and Non-EFT): **$0.00** (applied per account)
   - EFT and Paperless (Regardless of Premium): **$0.00** (applied per account)

   If this account is for more than one policy, changes in these fees are not effective until the revised fee information is provided for each policy.

2. **Late Fee: $10.00** (applied per account)
3. **Returned Payment Charge: $25.00** (applied per check, electronic transaction, or other remittance which is not honored by your financial institution for any reason including but not limited to insufficient funds or a closed account)
4. **Reinstatement Fee: $25.00** (applied per policy)

One or more of the fees or charges described above may be deemed a part of premium under applicable state law.

**Countersignature**

Authorized Representative

farmers.com      Policy No. 19171-56-13

**Questions?**
Call your agent Justin T Terry at (205) 352-2335 or email jterry@farmersagent.com

**Manage your account:**
Go to www.farmers.com to access your account any time!

56-6176   1st Edition   8-16

Page 3 of 3

# Personal Auto Policy



## Index

***Insuring Agreement*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

***Definitions Used Throughout This Policy*** . . . . . . .3

### *Part I - Liability Coverage* . . . . . . . . . . . . . . . . . . . . . . . .4
Bodily Injury Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
Property Damage Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
A.  Insuring Agreement - Bodily Injury and Property Damage
    Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
B.  Additional Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
C.  Additional Definitions Used in This Part Only . . . . . . . . . . . . .5
D.  Exclusions - What is Not Insured in Part I . . . . . . . . . . . . . . . .5
E.  Limits of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
F.  Legal Action Against Us . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7
G.  Conformity with Financial Responsibility Laws . . . . . . . . . . . .7
H.  Out of State Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7
I.  Other Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

### *Part II - Uninsured Motorist Coverage* . . . . . . . . . .8
Uninsured Motorist Bodily Injury (Including Underinsured
Motorist Coverage) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
A.  Insuring Agreement - Uninsured Motorist Bodily Injury
    Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
B.  Additional Definitions Used in This Part Only . . . . . . . . . . . . .8
C.  Exclusions - What Is Not Insured in Part II . . . . . . . . . . . . . . . .8
D.  Additional Duties for Part II - Uninsured Motorist . . . . . . . . . . .
    Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
E.  Limits of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
F.  Other Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
G.  Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
H.  Requirements and Time Limit for Starting Suit or
    Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

### *Part III - Medical Expense Coverage* . . . . . . . . . . .12
Medical . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
A.  Insuring Agreement - Medical Expense Coverage . . . . . . . . .12
B.  Unreasonable or Unnecessary Medical Expenses . . . . . . . . .13
C.  Additional Definitions Used in This Part Only . . . . . . . . . . . . .13
D.  Exclusions - What is Not Insured in Part III . . . . . . . . . . . . . . .14
E.  Additional Duties for Part III - Medical Expense . . . . . . . . . . . . .
    Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15
F.  Limits of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15
G.  Other Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15
H.  Our Right to Recover Payment . . . . . . . . . . . . . . . . . . . . . . . .16

### *Part IV - Damage to Your Car* . . . . . . . . . . . . . . . . . . . .16
Comprehensive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
Collision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
Towing and Road Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
A.  Insuring Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
B.  Additional Definitions Used in This Part Only . . . . . . . . . . . . .16
C.  Supplementary Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . .18
D.  Exclusions - What is Not Insured in Part IV . . . . . . . . . . . . . . .18
E.  Additional Duties for Part IV - Damage to Your Car . . . . . . . .20
F.  Payment of Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20
G.  Limits of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20
H.  Preservation of Salvage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21
I.  No Benefit to Bailee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21
J.  Legal Action Against Us . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21
K.  Other Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21
L.  Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

**Personal Auto Policy** (continued)

### Part V - Duties After an Accident and General Conditions ........................................ 21
A.  Duties After an Accident................................. 21
B.  General Conditions....................................... 22
   1.  Policy Period and Territory ......................... 22
   2.  Your Duty to Report Changed Circumstances ........ 22
   3.  Coverage Changes................................. 23
   4.  Legal Action Against Us........................... 23
   5.  Transfer of Your Interest .......................... 23
   6.  Our Right to Recover Payment ..................... 23
   7.  Bankruptcy....................................... 23
   8.  Termination or Reduction of Coverage.............. 23
   9.  Misrepresentation or Fraud ....................... 24
   10. Terms Conformed to Statutes ..................... 24
   11. Proof of Mailing.................................. 25

   12. Policy Fee........................................ 25
   13. Additional Benefits and Services................... 25
   14. Policy Notices ................................... 25
   15. Payment......................................... 25
   16. Joint and Individual Interests ..................... 25
   17. Loss Payable Provisions........................... 25
   18. Limited Material Damage Coverage in Mexico........ 26
   19. Car Sharing. .................................... 26

### Special Provisions ...................................... 26

## Personal Auto Policy (continued)

### Insuring Agreement

In return for **your** premium payment and based upon the representations **you** made in the application for this insurance, **we** agree to insure **you** for each of the coverages listed on the **Declarations Page** subject to all the terms, limits and conditions of the application, the **Declarations Page**, this policy and all of its endorsements.

### Definitions Used Throughout This Policy

A. Certain words and phrases are defined in this policy. Defined words and phrases appear in boldface type and have special meaning. Refer to the definition sections for the meanings. The defined terms have the same meaning whether in the singular, plural, or any other form of the same term.

B. **We**, **us** and **our** mean the Company named on the **Declarations Page** that provides this insurance.

C. **You** and **your** mean the **named insured** shown on the **Declarations Page** and **your** spouse, if a resident of **your** household.

  1. **Your** spouse includes a registered domestic partner, civil union or similar union where recognized under applicable state law:

     a. If the person is a resident of the same household with **you** during the policy period, and

     b. If the civil union or partnership was validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

  2. If **your** spouse or partner defined above is no longer a resident in the same household during the policy period, the spouse or partner will be considered insured by this policy until the earlier of:

     a. The end of ninety (90) days following the change of residency;

     b. The effective date of another policy listing **your** spouse or partner as a named insured;

     c. The end of the policy period; or

     d. Cancellation of this policy.

D. **Definitions**

  1. **Accident** means a sudden, unexpected and unintended event. An **accident** must occur during the policy period, arise out of the ownership, maintenance or use of a **car** and cause **bodily injury** or **property damage**.

  2. **Additional car** means a **car** that **you** acquire by purchase or by a written lease of at least six (6) continuous months.

  a. For coverage to apply **you** must:

     (1) Acquire the **car** during the policy period; and

     (2) Notify **us** within thirty (30) days of its acquisition.

  b. An **additional car** will have the broadest coverage **we** provide for any **car** shown on the **Declarations Page**.

  c. Coverage does not continue after thirty (30) days if **you** fail to notify **us** of its acquisition.

  3. **Bodily injury** means accidentally sustained bodily harm to an individual including any resulting illness, disease or death.

  4. **Business** means any full or part-time profession, occupation, trade or commercial enterprise.

  5. **Car** means a four-wheeled private passenger car of the coupe, sedan, station wagon, pick-up truck, van or sport utility type, with gross vehicle weight of 14,000 pounds or less, and licensed for and used only upon public highways. It does not include a motorhome, a step van, parcel delivery van, cargo cutaway van, or other van with the cab separate from the cargo area.

  6. **Commercial Ridesharing Program** means an arrangement or activity through which persons or property are transported for compensation, regardless of the amount or form of compensation charged or paid and includes the time:

     a. commencing when a driver of a **car** is available to accept transportation requests for passengers or property for compensation;

     b. between the driver accepting a transportation request and the passengers or property entering into or being loaded upon the **car** used for this request;

     c. passengers or property are in or upon the **car** used for this request; and

     d. between the passengers or property exiting or unloading from the **car** and the driver is no longer available to accept transportation requests.

  7. **Damages** mean compensation in the form of compensatory damages that can be recovered by those who suffer **bodily injury** or **property damage** as a result of an **accident**. **Damages** do not mean punitive or exemplary damages or any restitution, fines or penalties that are required to be paid as the result of any civil or criminal proceedings brought against any person. **Damages**, however, do include any damages recoverable due to the application of Alabama's Wrongful Death Statute.

## Personal Auto Policy (continued)

8. **Declarations Page** means the document from **us** listing:
   a. The type of coverages **you** have elected;
   b. The limit for each coverage;
   c. The premium for each coverage;
   d. The **cars** insured by this policy;
   e. The **named insured**; and
   f. Other policy information.
9. **Family member** means a person who resides with **you** and who is related to **you** by blood, marriage or adoption, including a ward or foster child. This also includes a minor in the custody of **you** or of a person related to **you** who resides with **you**.
10. **Named insured** means the person or persons listed on the **Declarations Page** as the **named insured**.
11. **Non-owned car** means any **car** or **utility trailer**, other than **your insured car**, which is not owned by, furnished or available for regular use by **you** or a **family member** while in the custody of or being operated by **you** or a **family member**.
12. **Occupying** means:
    a. In;
    b. On;
    c. Getting into; or
    d. Getting out of.
13. **Personal Car Sharing Program** means a **business** in which persons or legal entities are engaged in the **business** of facilitating the sharing of **cars** for temporary use by individuals.
14. **Prearranged Ride** means a period of time that begins when a driver accepts a transportation request through a digital network or similar connection and continues while the driver transports the rider in a **car**, and ends when the rider departs from the **car**.
15. **Property damage** means physical injury to or destruction of tangible property, including loss of its use.
16. **Rental car** means any **car** or a **utility trailer** that is rented by **you** on a daily or weekly basis not to exceed thirty (30) consecutive days, provided that this **car** or **utility trailer** is not owned by, furnished or available for regular use by **you** or a **family member**.
17. **Replacement car** means a **car** that **you** acquire to replace any **car** listed on the **Declarations Page**, either by purchase, or by a written lease of at least six (6) continuous months:

    a. **You** must:
       (1) acquire the **car** during the policy period; and
       (2) notify **us** within thirty (30) days of its acquisition.
    b. A **replacement car** will have the same coverage as **your insured car** that it replaces.
    c. Coverage does not continue after thirty (30) days if **you** fail to notify **us** of the replacement.
18. **Substitute car** means a **car** not owned by **you** or a **family member**, but being temporarily used by **you** or a **family member** as a substitute for a **car** listed on the **Declarations Page** only when that listed **car** is withdrawn from normal use because of breakdown, repair, servicing, loss or destruction.
19. **Utility trailer** means a non-motorized vehicle that is designed to be towed by **your insured car** and it includes a farm wagon or farm implement while towed by a **car** on public roads. **Utility trailer** does not mean:
    a. A trailer used as an office, store, display or any other **business** for commercial purposes;
    b. A passenger trailer;
    c. A trailer used as a primary residence; or
    d. A travel trailer or camper trailer.
20. **Your insured car** means:
    a. Any **car** listed on the **Declarations Page** of this policy;
    b. A **replacement car**;
    c. A **substitute car**;
    d. A **rental car**;
    e. An **additional car**; and
    f. Any **utility trailer**:
       (1) that **you** own, or
       (2) if not owned by **you**, while attached to **your insured car**.

## Part I - Liability Coverage

**Bodily Injury Liability**
**Property Damage Liability**

A. **Insuring Agreement - Bodily Injury and Property Damage Coverage**

   **We** will pay **damages** for **bodily injury** or **property damage** that any **insured person** is legally liable to pay as a result of an **accident** to which this coverage applies. **We** will defend an **insured person** against any covered suit or settle any claim or lawsuit as **we** deem appropriate. Subject to the

## Personal Auto Policy (continued)

limits of liability, **damages we** pay will include prejudgment interest awarded in a judgment against an **insured person**. **Our** duty to defend or settle any suit will end after **we** have exhausted the limits of liability through payment of judgments or settlements.

B. **Additional Payments**

**We** will also pay the following benefits for an **insured person**:

1. Premiums on appeal bonds and bonds to release attachments in any suit **we** defend; however, **we** are not obligated to apply for, furnish, or provide collateral or security for bonds. **We** are not required to purchase a bond in an amount greater than **our** limit of liability.

2. Up to $300 for the cost of bail bonds required because of an **accident** or traffic law violation arising out of the use of **your insured car**; however, **we** are not obligated to apply for, furnish, or provide collateral or security for any bonds. **We** are not required to purchase a bond in an amount greater than **our** limit of liability.

3. Actual loss of wages or salary up to $50 a day, but not other income, when **we** ask an **insured person** to attend a trial or hearing.

4. Reasonable expenses incurred by an **insured person** for first aid, if provided to others by the **insured person** at the scene of an **accident** involving any **car** insured under **Part I - Liability Coverage**.

5. Post judgment interest that accrues on any **damages** awarded in any suit **we** defend, which interest has accrued after judgment is entered and before **we** have paid, offered to pay, or deposited with the court that portion of the judgment that is not in excess of **our** limit of liability. **We** will not pay post judgment interest on any portion of the judgment that exceeds **our** limits of liability.

6. All costs **we** incur in settling any claim or defending any lawsuit.

7. Other reasonable expenses, if incurred at **our** request.

C. **Additional Definitions Used in This Part Only**

**Insured person** in Part I means:

1. **You** or any **family member**;

2. Any person using **your insured car** with **your** permission; or

3. Any other person or organization with respect only to legal liability for acts or omissions of:

a. Any person insured under Part I while using **your insured car**; or

b. **You** or any **family member** insured under Part I while using any **car**, other than **your insured car**, if not owned or hired by that person or organization.

**Insured person** does not mean:

1. The United States of America or any of its agencies;

2. Any person for **bodily injury** or **property damage** arising from the operation of a **car** by that person as an employee of the United States Government when the provisions of the Federal Tort Claims Act apply;

3. Any named excluded driver; or

4. Any person while **occupying**, operating or using a **car** that is available for hire or while using a **car** that is part of a **Personal Car Sharing Program**, a **Commercial Ridesharing Program** or a similar arrangement.

D. **Exclusions - What is Not Insured in Part I**

1. **We** do not insure **bodily injury** or **property damage** arising out of the ownership, maintenance or operation of **your insured car** while it is being used to carry persons or property for compensation or a fee, including but not limited to the pick up or delivery or return from a pick up or delivery of:

a. Products;

b. Documents;

c. Newspapers; or

d. Food.

This exclusion does not apply to a share-the-expense car pool.

2. **We** do not insure **bodily injury** or **property damage** caused intentionally by or at the direction of any **insured person**, whether or not any person intended to cause damage or injury of any nature.

3. **We** do not insure **bodily injury** or **property damage** with respect to which any person is insured under a nuclear energy insurance policy. This exclusion applies even if the limits of that policy are exhausted.

4. **We** do not insure **bodily injury** to an employee of an **insured person** arising in the course of employment. This exclusion does not apply to **bodily injury** to a domestic employee except when workers' compensation benefits are required or available for that domestic employee.

DOCUMENT 9

## **Personal Auto Policy** (continued)

5. **We** do not insure **bodily injury** or **property damage** resulting from an **insured person's** employment, or other involvement, in the **business** or occupation of:

   a. transporting,

   b. selling,

   c. repairing,

   d. servicing,

   e. storing, or

   f. parking

   **cars**. This exclusion includes road testing and delivery of the **cars**.

6. **We** do not insure **bodily injury** or **property damage** resulting from the use of a **car** by an **insured person** in an emergency occupation on a full-time, part-time, or volunteer basis. Such occupations include, but are not limited to, fire-fighting, police or ambulance activities. However, this exclusion does not apply to a **car** listed on the **Declarations Page** or any **replacement car**.

7. **We** do not insure **property damage** to property:

   a. owned by;

   b. being transported by;

   c. rented to; or

   d. in the charge of

   an **insured person**. This exclusion does not apply to **property damage** to a residence or private garage rented by that person.

8. **We** do not insure **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any motorized vehicle with less than four wheels.

9. **We** do not insure **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any **car**, other than **your insured car**, which is owned by, furnished or available for regular use by **you** or a **family member**.

10. **We** do not insure **bodily injury** to an **insured person** whenever the payment of **damages** for the **bodily injury** would benefit, directly or indirectly, an **insured person**.

11. **We** do not insure **bodily injury** or **property damage** resulting from liability assumed under any contract or agreement. This exclusion does not apply to liability **you** assume in a written contract relating to the use of a **rental car** or a **substitute car**.

12. **We** do not insure **bodily injury** or **property damage** resulting from an **insured person** participating, or **your**
**insured car** being used, in any racing, speed, demolition, stunt or performance driving contest, demonstration, instruction or activity, or in practice or preparation for any such activity or while operating on a driving track designed for racing or high performance driving.

13. **We** do not insure charges, fees and administrative expenses for services performed by law enforcement and municipal personnel when responding to an **accident**.

14. **We** do not insure **bodily injury** or **property damage** for any **insured person** who is using a **car** without a reasonable belief the **insured person** is entitled to do so. This exclusion does not apply to a **family member** using **your insured car** that is owned by **you**.

15. **We** do not insure loss due to theft or conversion of **your insured car**, a **non-owned car**, or trailer:

    a. By **you**, a **family member**, or any resident of **your** household;

    b. Prior to its delivery to **you** or a **family member**; or

    c. While in the care, custody, or control of anyone engaged in the **business** of selling the **car** or trailer.

16. **We** do not insure **bodily injury** or **property damage**:

    a. Caused by, or reasonably expected to result from, a criminal act or omission of an **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with or convicted of a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations);

    b. Arising out of the use or operation by an **insured person** of any **car** while it is being used to flee a law enforcement agent or crime scene.

17. **We** do not insure **bodily injury** or **property damage** for any **accident** that occurs while **your insured car** or any **car** is in a **Personal Car Sharing Program**, a **Commercial Ridesharing Program**, any **prearranged ride**, or a similar arrangement.

E. **Limits of Liability**

The limits of liability shown on **your Declarations Page** apply subject to the following:

1. The **bodily injury** liability limit for "Each Person" is the maximum for **bodily injury** sustained by one person in one **accident**. All claims of others derived from such **bodily injury**, including but not limited to, emotional injury, mental anguish, loss of society, loss of companionship, loss of services, loss of consortium and wrongful death are included in the "Each Person" limit.

DOCUMENT 1-9

## Personal Auto Policy (continued)

2. Subject to the **bodily injury** liability limit for "Each Person", the **bodily injury** liability limit for "Each Accident" is the maximum combined amount for **bodily injury** sustained by two or more persons in one **accident**.

3. The **property damage** liability limit for "Each Accident" is the maximum for all **property damage** sustained to all property in any one **accident**.

4. The limits of liability shown on the **Declarations Page** for **bodily injury** and **property damage** are the most **we** will pay regardless of the number of:

   a. Claims made;
   b. **Your insured cars**;
   c. **Insured persons**;
   d. Lawsuits brought;
   e. **Cars** involved in the **accident**; or
   f. Premiums paid.

5. If the **Declarations Page** shows that a combined single limit or "CSL" applies, the amount shown is the most **we** will pay for all **bodily injury** and **property damage** resulting from any one **accident** regardless of the number of:

   a. Claims made;
   b. **Your insured cars**;
   c. **Insured persons**;
   d. Lawsuits brought;
   e. **Cars** involved in the **accident**; or
   f. Premiums paid.

   All claims of others derived from such **bodily injury**, including, but not limited to, emotional injury, mental anguish, loss of society, loss of companionship, loss of services, loss of consortium and wrongful death are included in the "CSL" limit.

6. No person is entitled to duplicate payments for the same elements of **damages** from this policy or any other policy. Any amount payable to a person for liability coverage shall be reduced by all sums paid or payable to that person or for their benefit under any uninsured or underinsured motorist coverage, medical payments coverage, or physical damage coverage.

7. Stacking or aggregation of liability coverage limits for **bodily injury** or **property damage** is not permitted by this policy.

F. **Legal Action Against Us**

1. Under **Part I - Liability Coverage**, no legal action may be brought against **us** until:

   a. **we** agree in writing that the **insured person** has an obligation to pay; or
   b. the amount of that obligation has been finally determined by judgment after trial.

2. No person or organization has any right under this policy to bring **us** into any action brought to determine the liability of an **insured person**.

G. **Conformity with Financial Responsibility Laws**

When **we** certify this policy as proof under any financial responsibility law, it will comply with the law to the extent of the coverage required by law.

H. **Out of State Coverage**

1. If an **accident** to which this policy applies occurs in any state or province other than the one in which **your insured car** is principally garaged, and if a statute of that **accident** state or province that is applicable to **us** deems out-of-state vehicle liability policies issued by **us** to provide particular forms or limits of coverage not provided for in this policy when **your insured car** is involved in an **accident** in that state, then for purposes of that **accident** only, **we** will interpret **your** policy as providing the additional minimum coverage(s) deemed to be provided, at the minimum amounts permitted by law, and subject to the exclusions set forth in this policy.

2. **Our** obligation to pay such coverage shall be reduced by all other available insurance, to the extent permitted by the law of the other state.

3. Nothing contained herein constitutes a choice of law provision or consents to the application of the law of any particular state or province.

I. **Other Insurance**

1. If there is other applicable auto liability insurance on any other policy that applies to an **accident** insured under Part I, **we** will pay only **our** share. **Our** share is the proportion that **our** limits of liability bear to the total of all applicable limits. However, the total amount payable among all such policies will not exceed the limits provided by the single policy with the highest limits of liability.

2. Any insurance **we** provide under this policy for a **non-owned car** shall be excess over any other collectible insurance. The highest limits of liability shown on the

## Personal Auto Policy (continued)

Declarations Page of this policy for any one your insured car will apply.

### Part II - Uninsured Motorist Coverage

**Uninsured Motorist Bodily Injury (Including Underinsured Motorist Coverage)**

A. **Insuring Agreement - Uninsured Motorist Bodily Injury Coverage**

1. If a limit for this coverage is shown on your Declarations Page, we will pay damages an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by an insured person, caused by an accident, and arising out of the ownership, maintenance or use of an uninsured motor vehicle.

2. We will pay under this coverage only after the limits of bodily injury liability coverage under all liability policies applicable to an uninsured motor vehicle have been exhausted by payment of judgments or settlements.

B. **Additional Definitions Used in This Part Only**

1. **Damages** in Part II means:

    Compensation in the form of compensatory damages that can be recovered by those who suffer bodily injury or property damage, plus any punitive or exemplary damages that the insured person is legally entitled to recover, as a result of an accident.

2. **Insured person** in Part II means:

    a. You or any family member;

    b. Any person while occupying your insured car with your permission; or

    c. Any person who is entitled to recover damages covered by Part II because of bodily injury sustained by a person described in a or b above.

    **Insured person** does not mean:

    Any person while operating a car that is available for hire or while using a car that is part of a Personal Car Sharing Program, a Commercial Ridesharing Program or a similar arrangement.

3. **Uninsured motor vehicle** means a motor vehicle of any type:

    a. To which no liability bond or policy applies at the time of the accident;

    b. To which a liability bond or policy applies at the time of the accident, but the bonding or insuring company:

(1) denies coverage, or

(2) is or becomes insolvent or otherwise unable to pay motor vehicle liability insurance claims;

c. Which is a hit-and-run vehicle whose owner or operator cannot be identified and which causes an accident resulting in bodily injury; or

d. To which a bodily injury liability bond, policy, or security applies at the time of the accident, but the sum of all applicable limits of liability under all valid and collectible bonds, policies and securities:

(1) Is less than the amount of damages the insured person is legally entitled to recover; or

(2) Has been reduced by payments to persons injured in the accident, other than an insured person, to an amount less than the amount of damages the insured person is legally entitled to recover.

An uninsured motor vehicle does not mean any vehicle:

a. Owned by you or a family member or furnished or available for the regular use of you or a family member;

b. That is your insured car;

c. Owned or operated by a self-insured as contemplated by any financial responsibility law, or similar law;

d. Owned by a governmental unit or agency;

e. Operated on rails or crawler treads;

f. That is a farm-type tractor or equipment designed principally for use off public roads, except while being used upon public roads;

g. While located for use as a residence or premises; or

h. That is not required to be registered as a motor vehicle.

C. **Exclusions - What is Not Insured in Part II**

We do not provide uninsured motorist coverage to any insured person for:

1. The direct or indirect benefit of any insurer or self-insurer under any of the following or similar laws or funds:

    a. Workers' compensation law;

    b. Disability benefits law;

    c. The State Accident Insurance Fund;

    d. The United States; or

    e. Any state or any political subdivision.

## Personal Auto Policy (continued)

2. **Bodily injury** sustained by any **family member** while **occupying** or when struck by a vehicle owned by **you** that is insured for uninsured motorist coverage on a primary basis under any other policy.

3. **Bodily injury** sustained by an **insured person** while using, **occupying** or when struck by a **car** of any type that is designed to be operated on the public roads and that is owned by **you** or a **family member** or furnished for or available for regular use if that **car** is not an **insured car** or is uninsured for this coverage.

4. **Bodily injury** arising out of the ownership, maintenance or operation of **your insured car** while it is being used to carry persons or property for compensation or a fee, including but not limited to the pick up or delivery or return from a pick up or delivery of:

    a. Products;
    b. Documents;
    c. Newspapers; or
    d. Food.

    This exclusion does not apply to a share-the-expense car pool.

5. **Bodily injury** when an **insured person** is using a **car** without a reasonable belief that the person is entitled to do so. This exclusion does not apply to a **family member** using **your insured car** that is owned by **you**.

6. **Bodily injury** for which insurance is afforded under a nuclear energy liability insurance policy or would be afforded under a nuclear energy liability insurance policy but for its termination upon exhaustion of its limit of liability.

7. **Bodily injury** resulting from an **insured person** participating in or **your insured car** being used in any racing, speed, demolition, stunt or performance driving contest, demonstration, instruction or activity, or in practice or preparation for any such activity or while operating on a driving track designed for racing or high performance driving.

8. **Bodily injury**:

    a. Caused by, or reasonably expected to result from, a criminal act or omission of an **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

    b. Arising out of the operation of any **car** by an **insured person** while it is being used to flee a law enforcement agent or crime scene.

9. **Bodily injury** for any accident that occurs while **your insured car** or any **car** is in a **Personal Car Sharing Program**, a **Commercial Ridesharing Program**, any **prearranged ride**, or a similar arrangement.

10. Attorney's fees or litigation expenses including those that result from any lawsuit where punitive or exemplary damages were awarded.

D. **Additional Duties for Part II - Uninsured Motorist Coverage**

An **insured person** must comply with the following provisions:

1. Any judgment or settlement for **damages** against an owner or operator of an **uninsured motor vehicle** that arises out of a lawsuit brought without **our** written consent is not binding on **us** unless **we**:

    a. Received from the **insured person** reasonable notice of the suit that resulted in the judgment; and
    b. Had a reasonable opportunity to protect **our** interests in the suit.

2. When the **insured person** informs **us** of a settlement offer, if any, proposed by or on behalf of the owner or driver of the **uninsured motor vehicle**, the **insured person** must request **our** written consent to accept such settlement offer.

    a. If we consent in writing, then the **insured person** may accept such settlement offer.
    b. If we inform the **insured person** in writing that **we** do not consent, then the **insured person** may not accept such settlement offer and:

        (1) **We** will make payment to the **insured person** in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the **uninsured motor vehicle**; and

        (2) Any recovery from or on behalf of the owner or driver of the **uninsured motor vehicle** shall first be used to repay **us**.

3. An **insured person** must take all necessary steps to protect **our** right of subrogation, which may include the filing of a suit against an uninsured motorist. Any suit filed by an **insured person** must be filed within the applicable statute of limitations. If **we** make a payment and the

## Personal Auto Policy (continued)

insured person recovers from another party, the insured person shall hold the proceeds in trust for us and pay us back the amount we have paid.

4. A person seeking Uninsured Motorist Coverage under this policy must also submit to physical examinations at our expense by doctors we select as often as we may reasonably require.

5. Any action brought against us pursuant to this coverage must be brought in the county in which the person seeking benefits resides or in the United States District Court serving that county.

E. **Limits of Liability**

A. Except as provided in B. below:

1. When there is only one your insured car on the policy:

   a. The Uninsured Motorist liability limit stated on the Declarations Page for each insured person is the maximum we will pay for all damages resulting from bodily injury sustained by any one person in any one accident. Included in the limit, but not as a separate claim or claims, are all consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow and emotional distress.

   b. Subject to the limit for each person, the bodily injury liability limit stated on the Declarations Page for each accident is the maximum we will pay for all claims by two or more insured persons for all damages for bodily injury arising out of any one accident. Included in the limit, but not as a separate claim or claims, are all consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow and emotional distress.

2. When there is more than one your insured car on the policy:

   a. And the insured person was occupying your insured car at the time of the accident:

   (1) The limit of liability for Uninsured Motorist coverage stated on the Declarations Page for each insured person for the occupied your insured car, plus the sum of the highest limits of liability for Uninsured Motorists coverage

stated on the Declarations Page for each insured person applicable to any other your insured car on the policy, up to a maximum of two additional limits, is our maximum limit of liability for all damages. Included in the limit, but not as a separate claim or claims, are all consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow and emotional distress.

   (2) Subject to the limit for each person, the limit of liability for Uninsured Motorists coverage stated on the Declarations Page for each accident for the occupied your insured car, plus the sum of the highest limits of liability for Uninsured Motorists coverage stated on the Declarations Page for each accident applicable to any other your insured car on the policy, up to a maximum of two additional limits, is our maximum limit of liability for all damages for bodily injury resulting from any one accident. Included in the limit, but not as a separate claim or claims, are all consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow and emotional distress.

   b. And the insured person was not occupying your insured car at the time of the accident:

   (1) The sum of the highest limits of liability for Uninsured Motorists coverage stated on the Declarations Page of the policy for each insured person applicable to any of your insured cars, up to a maximum of three limits, is our maximum limit of liability for all damages. Included in the limit, but not as a separate claim or claims, are all consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow and emotional distress.

   (2) Subject to the limit for each person, the sum of the highest limits of liability for Uninsured Motorists coverage stated on the Declarations Page of the policy for each accident applicable to any other of your

farmers.com

## Personal Auto Policy (continued)

insured cars up to a maximum of three limits, is our maximum limit of liability for all damages for bodily injury resulting from any one accident. Included in the limit, but not as a separate claim or claims, are all consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow and emotional distress.

B. If the Uninsured Motorists Coverage is payable because liability coverage under any policy other than this policy is excluded for damages sustained by you or any family member:

1. When there is only one insured car on the policy:

   a. That part of the limit of liability for Uninsured Motorist coverage stated on the Declarations Page of the policy for each insured person that does not exceed the minimum limits specified in the Alabama Motor Vehicle Safety Responsibility Act is the maximum we will pay for all damages resulting from bodily injury sustained by any one insured person in any one accident. Included in the limit, but not as a separate claim or claims, are all consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow and emotional distress.

   b. Subject to the limit for each insured person, the part of the limit of liability for Uninsured Motorists coverage stated on the Declarations Page of the policy for each accident or occurrence that does not exceed the minimum limits specified in the Alabama Motor Vehicle Responsibility Act is the maximum we will pay for all claims by two or more insured persons for all damages for bodily injury arising out of any one accident. Included in the limit, but not as a separate claim or claims, are all consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow and emotional distress.

2. When there is more than one your insured car on the policy:

   a. The sum of that part of the limit of liability for Uninsured Motorist coverage stated on the Declarations Page of the policy for each insured

person applicable to any of your insured cars that does not exceed the minimum limits specified in the Alabama Motor Vehicle Safety Responsibility Act up to a maximum of three limits, is our maximum limit of liability for all damages. Included in the limit, but not as a separate claim or claims, are all consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow and emotional distress.

   b. Subject to the limit for each insured person, the sum of the highest limits of liability for Uninsured Motorists coverage stated on the Declarations Page for each accident applicable to any other of your insured cars up to a maximum of three limits, is our maximum limit of liability for all damages for bodily injury resulting from any one accident. Included in the limit, but not as a separate claim or claims, are all consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow and emotional distress.

C. We will not pay under Part II any expenses paid or payable under any medical or disability benefits coverage applicable to the uninsured motor vehicle and collectible from the insurer of such vehicle.

D. No one will be entitled to duplicate payments for the same elements of damages under this or any other policy. Additionally, the limits of liability under Part II will be reduced by all sums paid or payable:

   a. Because of bodily injury by or on behalf of any persons or organizations that may be legally responsible;

   b. Under Part I - Liability Coverage;

   c. Under Part III - Medical Expense Coverage;

   d. As a result of bodily injury under any workers' compensation law, disability benefits law or any similar law.

F. Other Insurance

1. With respect to section 2d of the definition of uninsured motor vehicle, we will reduce the insured's total damages by any amount available to that insured, under any bodily injury liability bonds or policies applicable to the uninsured motor vehicle, that such insured

## Personal Auto Policy (continued)

did not recover as a result of a settlement between that **insured** and the insurer of an **uninsured motor vehicle.** However, any reduction of the **insured's** total **damages** will not reduce the limit of liability for this coverage. This paragraph shall not apply if **we** advance payment to the **insured** in an amount equal to the tentative settlement with the insurer of the **uninsured motor vehicle.**

2. Any insurance **we** provide with respect to a non-owned motor vehicle shall be excess over any other collectible insurance providing coverage on a primary basis.

3. If the coverage under this policy is provided:

   a. On a primary basis, subject to the Limits of Liability under Part II, **we** will pay only **our** share of the **damages** that must be paid under insurance providing coverage on a primary basis. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   b. On an excess basis, subject to the Limits of Liability under Part II, **we** will pay only **our** share of the **damages** that must be paid under insurance providing coverage on an excess basis. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

4. Reductions to any **damages** recoverable under this Part II due to (F1) above will not apply when the Uninsured Motorist limits provided by this policy are the minimum limits required by the Alabama Motor Vehicle Safety Responsibility Act and the value of the **insured person's** injury exceeds the combined total of all of the **bodily injury** or liability coverages available to the **insured person** plus all the Uninsured Motorist limits available to **insured person** plus the Medical Payment paid or payable to the **insured person** under this policy. Also, when the Uninsured Motorist limits exceed the minimum limits required by the Alabama Motor Vehicle Safety Responsibility Act, reductions to any **damages** recoverable under this Part II due to (F1) above will only be made to the extent that the amount paid or payable will not be reduced below the minimum limits required by the Alabama Motor Vehicle Safety Responsibility Act.

G. **Arbitration**

If an **insured person** and **we** do not agree (1) that the person is legally entitled to recover damages from the owner or operator of an **uninsured motor vehicle,** or (2) as to the

amount of payment under this Part, then either the **insured person** or **we** may make a written request that the issue(s) be determined by arbitration. If both parties agree to arbitrate, the written decision of the arbitrator will be binding on both parties.

In the event the parties agree to arbitrate, the **insured person** and **we** will agree on the selection of a single arbitrator. If the **insured person** and **we** cannot agree on the choice of the arbitrator within thirty (30) days, the judge of the court of competent jurisdiction will appoint the arbitrator. Arbitration will take place in the county where the **insured person** lives. The arbitration will be subject to the usual rules of procedure and evidence in the county and state where the **insured person** lives. The arbitrator's fee and expenses will be shared equally by both parties. The parties will bear their own arbitration expenses.

Either the **insured person** or **we** can refuse to agree to arbitration. In this event, a trial may take place in a court of competent jurisdiction in the county or district where the **insured person** lives. A refusal to arbitrate must be in writing and sent to the requesting party by mail within twenty (20) days of the receipt of the request to arbitrate. If written refusal to arbitrate is not sent within this twenty (20) day period, the parties will be deemed to have agreed to binding arbitration.

H. **Requirements and Time Limit for Starting Suit or Arbitration**

An **insured person** may not bring any suit or action against **us,** including any proceeding in arbitration, unless that person has fully complied with all of the terms of this policy. Any suit or action, including arbitration, must be started within three (3) years after the date of the accident causing the injury or death or within one (1) year after the liability insurer of the owner or operator of the vehicle liable to the **insured person** has become the subject of insolvency proceedings in any state, whichever is later, regardless of whether the limits of liability of any applicable **bodily injury** liability bonds or policies have been exhausted by payment of judgments or settlements. Arbitration is started by sending a written request to arbitrate by mail. A suit is started by filing a complaint with a court of competent jurisdiction.

## Part III - Medical Expense Coverage

### Medical

A. **Insuring Agreement - Medical Expense Coverage**

1. Subject to the limit of liability shown on **your Declarations Page,** if **you** have paid the premium for

## Personal Auto Policy (continued)

this coverage, **we** will pay the **reasonable expenses** for **necessary medical services** and funeral services:

a. Because of **bodily injury**;

b. Caused by an **accident**; and

c. Sustained by an **insured person**.

Medical services must be provided within two (2) years from the date of the **accident**.

2. **We** have the right to review all medical expenses submitted on behalf of an **insured person** and to determine what are **reasonable expenses** and **necessary medical services**. **We** have the right to also use third party sources of information selected by **us**, and sources may include, but are not limited to:

a. Medical record reviews;

b. Computer databases;

c. Published sources of medical expense information;

d. Utilization reviews;

e. Peer reviews;

f. Medical bill reviews; or

g. Medical examinations by physicians that **we** will select.

3. Additionally, **we** have the right to enter into a contract with a third party who has an agreement with the **insured person's** medical provider to charge fees as determined by that agreement.

B. **Unreasonable or Unnecessary Medical Expenses**

1. Upon conclusion of **our** review of medical expenses, **we** may refuse to pay for medical expenses that **we** determine to be unreasonable or unnecessary because:

a. The fee for the services is greater than the fee for **reasonable expenses**; or

b. The services provided for the treatment of **bodily injury** are not **necessary medical services**.

2. If a medical service provider files suit against an **insured person** after **we** have determined their fees are unreasonable or unnecessary, **we** will pay any resulting defense costs, and any resulting judgment against the **insured person**, subject to the limit of liability for this coverage if:

a. The **insured person** has paid the entire disputed amount to the provider; or

b. The provider has begun collection activity against the **insured person** for the amounts that **we** determined were unnecessary or unreasonable.

When **we** defend, **we** will choose counsel and **we** will pay reasonable expenses that the **insured person** incurs at **our** request, including loss of earnings up to $50 per day for the **insured person** to attend any court hearing.

C. **Additional Definitions Used in This Part Only**

1. **Insured person**, in Part III, means:

a. **You** or any **family member**:

(1) While **occupying** any **car**; or

(2) When struck as a pedestrian by a **car**; or

b. Any other person while **occupying your insured car** with permission of the owner.

**Insured person** does not mean:

Any person while operating a **car** that is available for hire or while using a **car** that is part of a **Personal Car Sharing Program**, a **Commercial Ridesharing Program** or a similar arrangement.

2. **Necessary medical services** mean prescribed medical services which are reasonable and necessary for treatment of the **bodily injury**, including the number and duration of treatments in the region in which those services are provided. The services are limited to medical, surgical, dental, x-ray, ambulance, hospital and professional nursing, and funeral services; and include the cost of pharmaceuticals, orthopedic and prosthetic devices, eyeglasses, and hearing aids.

**Necessary medical services** do not mean:

a. Treatment, services, products, or procedures that are:

(1) Experimental in nature, for research, or not primarily designed to serve a medical purpose, or

(2) Not commonly and customarily recognized throughout the medical profession and within the United States as appropriate for the treatment of **bodily injury**; or

b. The use of:

(1) Thermography or other related procedures of a similar nature, or

(2) Acupuncture or other related procedures of a similar nature; or

c. Purchase, rental cost, or use of:

(1) Hot tubs, spas, water beds,

(2) Exercise equipment,

(3) Heating or vibrating devices,

## Personal Auto Policy (continued)

(4) Furniture or equipment not primarily designed to serve a medical purpose,

(5) Memberships in health clubs, or

(6) Medical reports unless requested by **us**.

3. **Reasonable expenses** mean an amount for a medical service that is the lowest of:

   a. The charges that are usual among providers of similar **necessary medical services** in the region in which those services are provided;

   b. Any fee schedule applicable to the type of **necessary medical services** that were provided in the State where the services were provided, including but not limited to, fee schedules applicable to no-fault benefits, personal injury protection benefits and medical payments coverage;

   c. The amount agreed upon between the **insured person's** medical provider and any third party concerning charges for medical services, if **we** have a contract with that third party by contract or through a series of contracts;

   d. The fees that are agreed to by the medical provider and **us**;

   e. If applicable, the amount that any government or government-subsidized program or plan paid to the **insured person's** medical provider for medical services; or

   f. The amount that the **insured person's** medical provider agreed to accept from the **insured person's** health plan.

   **Reasonable expenses** does not mean any premium or other amount paid to obtain medical coverage or for participation under any private or government or government-subsidized health program or plan.

D. **Exclusions - What is Not Insured in Part III**

   **We** do not provide Medical Expense Coverage for any **insured person** for **bodily injury:**

   1. Arising out of the ownership, maintenance or operation of **your insured car** while it is being used to carry persons or property for compensation or a fee, including but not limited to the pick up or delivery or return from a pick up or delivery of:

      a. Products;

      b. Documents;

      c. Newspapers; or

      d. Food.

      This exclusion does not apply to a share-the-expense car pool.

   2. Sustained while **occupying** any **car** while it is being used as a residence or premises.

   3. Sustained while **occupying** or when struck by any **car** other than **your insured car** that is owned by **you** or furnished or available for **your** regular use.

   4. Due to medical conditions or illnesses not causally related to an **accident**.

   5. Occurring during the course and scope of employment if workers' compensation or disability benefits are required or available for the **bodily injury**.

   6. Caused by:

      a. war (declared or undeclared);

      b. civil war;

      c. insurrection;

      d. rebellion;

      e. revolution;

      f. nuclear reaction, radiation, or radioactive contamination;

      g. chemical or biological contamination; or

      as a consequence of any of these.

   7. Caused during active participation in any racing, speed, demolition, stunt or performance driving contest, demonstration, instruction or activity, or in practice or preparation for any such activity or while operating on a driving track designed for racing or high performance driving.

   8. For the portion of medical expenses paid or payable by any government or government-subsidized program or plan.

   9. Caused by or resulting from mold, fungi or bacteria.

   10. Caused intentionally by, or at the direction of, an **insured person**, whether or not such person intended to cause damage or **bodily injury** of any nature.

   11. To any person while in the commission of a felony or while attempting to flee a law enforcement agent or crime scene.

   12. Sustained by any person while **occupying your insured car** without the express or implied permission of **you** or a **family member**. This exclusion does not apply to a

## Personal Auto Policy (continued)

**family member** using **your insured car** which is owned by **you**.

13. Sustained by **you** or a **family member** while **occupying** a **non-owned car** without the express or implied permission of the owner.

14. Sustained while **your insured car** or any **car** is in a **Personal Car Sharing Program**, a **Commercial Ridesharing Program**, any **prearranged ride**, or a similar arrangement.

15. Sustained while **occupying** a **car** other than a **car** listed on the **Declarations Page** while the **car** is being used in the **business** of an **insured person**.

E. **Additional Duties for Part III - Medical Expense Coverage**

In addition to the terms and conditions of this policy and in addition to compliance with **Part V - Duties After an Accident and General Conditions**, an **insured person** seeking coverage under Part III of this policy must also comply with the following provisions:

1. Authorize **us** to obtain:
   a. Medical records or reports;
   b. Any documents **we** indicate are necessary to investigate and process the claim; and
   c. Event data recorders and/or sensing and diagnostic modules or any other recording device for the purpose of retrieving data following an **accident**.

2. Submit, as often as **we** reasonably require, to a request for production of documents at the time of an examination under oath and any other time, and allow the copying of any documents **we** or **our** designated representative requests. This includes, but is not limited to, all documents concerning **your** income (payroll records, profit and loss statements, etc.), finances, credit, and any other documents **we** indicate are reasonable and necessary to investigate and process **your** claim. Such documents must be provided to **us** or **our** designated representative in a timely manner, and if requested, prior to an examination under oath.

3. As required by the law of the state in which this policy was issued, submit to physical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require.

Any expense, if reasonable and incurred by an **insured person** at **our** request, will be paid by **us**.

F. **Limits of Liability**

1. The limit of liability for the coverage provided by Part III to any one **insured person** is the limit shown for this coverage on the **Declarations Page**. The limits are not increased by insuring additional **cars**, even though a separate premium for each **car** is shown on the **Declarations Page**.

2. The limit of liability for funeral expenses shall not exceed $2,000 per person.

3. **We** will pay no more than the limit of liability shown for this coverage on the **Declarations Page** for any **insured person(s)** injured in any one **accident** regardless of the number of:
   a. **Cars** insured;
   b. **Insured person(s)**;
   c. Claims made;
   d. Claimants;
   e. Applicable policies;
   f. Premiums shown on **your Declarations Page**; or
   g. Vehicles involved in the **accident** that triggers this coverage.

4. No one will be entitled to receive duplicate payments for the same elements of loss under this Part and any other Part of this policy. Additionally, the limits of liability under Part III will be reduced by all sums paid and payable:
   a. Because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible;
   b. Under **Part I - Liability Coverage**;
   c. Under **Part II - Uninsured Motorist Coverage**; or
   d. As a result of **bodily injury** under any workers' compensation law, disability benefits law or any similar law.

5. Stacking or aggregation of Medical Expense Coverage is not permitted by this policy.

G. **Other Insurance**

If there is other applicable medical insurance on any other policy that applies to a loss insured under Part III, **we** will pay only **our** share. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits for the Medical Expense Coverage. Any Medical Expense Coverage **we** provide to any **insured person** for an accident involving a **non-owned car** will be excess over any other collectible insurance.

## Personal Auto Policy (continued)

If any applicable insurance other than this policy is issued to an **insured person** by **us** or any other insurer, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limit of liability.

H. **Our Right to Recover Payment**

When an **insured person** has been paid medical expenses by **us** under this policy and also recovers medical expenses from another, to the extent that state law permits, the amount recovered from the other must be held by that **insured person** in trust for **us** and reimbursed to **us** to the extent of **our** payment.

## *Part IV - Damage to Your Car*

**Comprehensive**
**Collision**
**Towing and Road Service**
A. **Insuring Agreement**

1. **Comprehensive Coverage**

Subject to the limits of liability, **we** will pay for a loss to **your insured car**, its **additional equipment** and any **non-owned car** caused by any direct, sudden and accidental means other than **collision**, less any applicable deductibles, if Comprehensive Coverage is shown on **your Declarations Page**. Any deductible amount will apply separately to each loss. If loss to more than one **your insured car** or **non-owned car** results from the same insured loss, only the lowest applicable deductible will apply.

If breakage of glass results, **you** may elect to have it treated as loss caused by **collision**.

2. **Collision Coverage**

Subject to the limits of liability, **we** will pay for loss to **your insured car**, its **additional equipment** and any **non-owned car** caused by any direct, sudden and accidental **collision**, less any applicable deductibles, if Collision Coverage is shown on **your Declarations Page**. Any deductible amount will apply separately to each loss. If loss to more than one **your insured car** or **non-owned car** results from the same **collision**, only the lowest applicable deductible will apply.

In addition, **we** will pay, without applying the deductible, the reasonable cost to replace any child safety seat damaged in an **accident** to which this coverage applies.

3. **Towing and Road Service Coverage**

a. If **your Declarations Page** shows Towing and Road Service Coverage, then subject to a maximum limit of $150 for each disablement and subject to the Service Call Conditions and exceptions in this Insuring Agreement, if **your insured car** becomes disabled and **you** need help, **we** are providing **you** access to 24-hour toll-free assistance. Service includes the towing and labor costs related to a mechanical disablement for:

(1) Towing;

(2) Jump starts;

(3) Tire changes;

(4) Lock-out service; and

(5) Fluid delivery, including the cost of fuel, oil, water or other fluids. **We** will pay for the cost of fuel, once per **your insured car** per policy period.

b. Service Call Conditions are as follows:

(1) Towing to dislodge the **car** from its place of disablement must be within 100 feet of a public street or highway;

(2) Labor must be performed at the place of mechanical disablement;

(3) **We** do not pay for the cost of fuel that exceeds more than once per **your insured car** per policy period;

(4) **We** do not pay for the cost for tires, fuel, belts, keys, parts or tools associated with the service or labor being performed; and

(5) Any service costs in an amount in excess of **our** maximum per disablement limit must be paid directly to the service provider by **you** at the time of service.

c. Towing and Road Service Coverage does not apply to:

(1) recreational vehicles,

(2) motorhomes,

(3) towed **cars**,

(4) motorcycles, or

(5) stored **cars**

even if the **car** is considered to be **your insured car**.

B. **Additional Definitions Used in This Part Only**

1. **Actual Cash Value** means the fair and reasonable cash price for which property can be repaired or replaced in the marketplace at the time of loss. The price includes an

## Personal Auto Policy (continued)

allowance for depreciation, physical deterioration and obsolescence.

2. **Additional equipment** means any furnishing or **equipment** that is permanently attached to **your insured car** and common to its use, but is not the **car's** factory available furnishing or **equipment**.

   a. This includes, but is not limited to:

      (1) Any video, electronic sound reproducing or transmitting **equipment**, and its component parts, media and data, including but not limited to DVD, Game System or MP3 player;

      (2) Any painted, chrome or finished surface, whether refinished in whole or in part, of any **car** insured under this Part where the claim exceeds the cost of duplicating the **car's** factory applied surface finish;

      (3) Tires, wheels, rims, spinners, grilles, louvers, side pipes, hood scoops or spoilers or any exterior surface, body or exhaust **equipment**, or modification thereto, which exceeds the cost of repairing or replacing the **car's** factory available **equipment**;

      (4) Any engine, transmission or suspension parts, or modification thereto, which exceeds the cost of repairing or replacing the **car's** factory available **equipment**;

      (5) GPS navigational systems;

      (6) Special carpeting, insulation, wall paneling, furniture or bars;

      (7) Facilities for cooking or sleeping including enclosures or bathroom facilities;

      (8) Height-extending roofs; or

      (9) Custom murals, paintings or other decals or graphics.

   b. **Additional equipment** does not mean:

      (1) **Additional equipment** not permanently installed that is designed for the reproduction of sound, or any radio receiving or radio receiving and transmitting **equipment**. This applies to such **equipment** as a tape player, tape recorder, citizens band radio and two-way mobile radio, telephone, television, or **equipment** designed or used for the detection or location of radar or laser. It also applies to any electronic device

incorporating any of this **equipment**, as well as accessories, component parts and antennae;

      (2) Tapes, discs, records, reels, cassettes, cartridges, media, data, carrying cases or other devices for the use with **equipment** designed to reproduce, record, receive, play or transmit audio, visual or data signals;

      (3) A camper body or trailer;

      (4) Awnings, cabanas, or **equipment** designed to create additional living facilities;

      (5) Wear and tear losses to **additional equipment** including, but not limited to:

         (a) scorching,

         (b) marring,

         (c) scratching, or

         (d) breakage, except breakage to glass permanently attached to **your insured car** or breakage of internal **additional equipment**, whether attached or not; or

      (6) Newly acquired **additional equipment** unless **you** report such items to **us** within thirty (30) days after **you** have taken delivery and **we** agree to provide coverage.

3. **Collision** means the upset of **your insured car** or **non-owned car** or its impact with another **car** or object. **Collision** does not mean loss caused by or due to:

   a. Missiles;

   b. Falling objects;

   c. Fire;

   d. Theft or larceny;

   e. Explosion;

   f. Earthquake;

   g. Windstorm;

   h. Hail, water or flood;

   i. Malicious mischief or vandalism;

   j. Riot or civil commotion;

   k. Colliding with a bird or animal; or

   l. Breakage of glass.

4. **Diminution in value** means the actual or perceived loss in market or resale value that results from a sudden, direct and accidental loss.

5. **Equipment** means **equipment** permanently attached to **your insured car** and common to its use.

## Personal Auto Policy (continued)

6. **Household Pet** means a fully domesticated animal owned by **you** for personal companionship, such as a dog, a cat, a reptile, a bird or a rodent. **Household Pet** does not include any type of horse, cow, pig, sheep, goat, chicken, turkey, or captive fur-bearing animal, or any animal commonly kept for food or profit.

7. **Like kind and quality parts** means parts similar in type, condition and quality to those parts made for or by the original **car** manufacturer. These parts may be made for or by the original **car** manufacturer or may come from other sources such as manufacturers or suppliers of rebuilt parts, quality recycled (used) parts suppliers and non-original **equipment** manufacturers.

C. **Supplementary Payments**

1. **Transportation Expense Due to Theft**

   If **your** Declarations Page shows Comprehensive Coverage, **we** will pay for transportation expenses incurred by **you** because of the total theft of **your insured car**. **We** will pay up to $30 per day, but no more than $900 each loss. This coverage begins 48 hours after the theft has been reported to **us** and to the police and ends when the **car** is returned to use or when **we** offer settlement for the loss.

2. **Clothing or Luggage**

   **We** will pay up to, but not more than, $200 for loss of clothing or luggage in **your insured car** and belonging to **you** or a **family member** if the loss is caused by:

   a. **Collision** of **your insured car**, if Collision Coverage is shown on **your** Declarations Page;

   b. Fire, lightning, flood, earthquake, explosion, falling aircraft, or the entire theft of **your insured car**; if loss occurs to **your insured car** from the same cause and Comprehensive Coverage is shown on **your** Declarations Page.

3. **Household Pets**

   a. If **your Household Pets** are inside **your insured car** during a total theft and Comprehensive Coverage is shown on **your** Declarations Page for that **your insured car**, **we** will pay reasonable amounts up to $600 for the loss of any and all such **Household Pets** because of that covered total theft loss.

   b. If **your Household Pets** are inside of **your insured car** at the time of a loss due to **collision**, and Collision Coverage is shown on **your** Declarations Page for that **your insured car**, **we** will pay reasonable

amounts up to a total of $600 for the veterinary care, burial, and/or disposal of all such **Household Pets** arising out of their injury or death during an insured loss.

D. **Exclusions - What is Not Insured in Part IV**

**We** do not insure loss:

1. Arising out of the ownership, maintenance or operation of **your insured car** or **non-owned car** while it is being used to carry persons or property for compensation or a fee, including but not limited to the pick up or delivery or return from a pick up or delivery of:

   a. Products;
   b. Documents;
   c. Newspapers; or
   d. Food.

   This exclusion does not apply to a share-the-expense car pool.

2. Caused by:

   a. war (declared or undeclared);
   b. civil war;
   c. insurrection;
   d. rebellion;
   e. revolution;
   f. nuclear radiation exposure or contamination;
   g. radioactive contamination or exposure;
   h. biological contamination, exposure or attack; or
   any consequence of any of these.

3. Caused by theft to **equipment** designed for the reproduction of sound, or any radio receiving or radio receiving and transmitting **equipment**.

   a. This applies to such **equipment** as a tape player, tape recorder, citizens band radio and two-way mobile radio, telephone, television, or **equipment** designed or used for the detection or location of radar or laser.

   b. It also applies to any electronic device incorporating any of this **equipment**, as well as accessories and antennas.

   c. This exclusion does not apply to that **equipment** which is permanently installed in **your insured car**.

4. Consisting of the theft of tapes, records, reels, cassettes, cartridges, discs, carrying cases or other devices for use with **equipment** designed for the reproduction of sound.

DOCUMENT 1-9

## Personal Auto Policy (continued)

5. To a **utility trailer** owned by **you** or a **family member** and not listed on the **Declarations Page**. But, coverage does apply to a **utility trailer** ownership of which **you** acquire during the policy period if **you** ask **us** to insure it within thirty (30) days after **you** acquire it.

6. Due and confined to:
   a. wear and tear;
   b. freezing; or
   c. mechanical or electrical breakdown or failure.

   This exclusion does not apply if damage results from the total theft of **your insured car** or the burning of wiring.

7. To permanently attached or detachable camper body, slide-on camper, tonneau covers, or a camper shell.

8. To **your insured car** or **non-owned car** due to increased cost of repair or replacement of the following furnishings or equipment:
   a. Special carpeting, insulation, wall paneling, furniture or bars;
   b. Dining, kitchen and sleeping facilities including enclosures or bathroom facilities;
   c. Height-extending roofs;
   d. Murals, special paint and/or methods of painting, decals or graphics.

9. Due to lack of routine maintenance including but not limited to lack of lubricant, coolant, or loss resulting from seepage of water.

10. To any **non-owned car** being maintained or used by any person while employed or otherwise engaged in the **business** of:
    a. selling,
    b. repairing,
    c. servicing,
    d. storing, or
    e. parking
    **cars**. This includes the road testing and delivery of any **non-owned car**.

11. Resulting from an insured person participating in, or **your insured car** or **non-owned car** being used in racing, speed, demolition, stunt or performance driving contest, demonstration, instruction or activity, or in practice or preparation for any such activity or while operating on a driving track designed for racing or high performance driving.

12. Caused by or consisting of mold, fungi or bacteria regardless of the factors causing or contributing to its growth.

13. Due to theft or conversion of **your insured car**:
    a. By **you**, a **family member** or any resident of **your** household;
    b. Prior to its delivery to **you** or a **family member**; or
    c. While in the care, custody or control of anyone engaged in the **business** of selling **cars**.

14. From theft or unlawful conversion by any person after custody of **your insured car** has been entrusted to another party for the purpose of selling or leasing **your insured car**.

15. To tires, unless caused by fire, malicious mischief, vandalism, theft, or unless the damage occurs at the same time and from the same cause as other covered damage.

16. Caused intentionally by, or at the direction of, an insured person, whether or not such person intended to cause damage of any nature. However, this exclusion does not apply to a loss to **your insured car** to the extent of the legal interest of **you** or a **family member** who:
    a. Sustains the loss as the result of family violence by:
       (1) **You**,
       (2) A **family member**,
       (3) A former spouse or person who entered into a civil union with the **named insured**, or
       (4) Any person who resides in or has resided in **your** household;
    b. Did not direct, participate in, or consent to the intentional act causing the loss; and
    c. Filed a family violence complaint against the person who caused the violence resulting in the loss.

17. Due to destruction or confiscation by governmental or civil authorities.

18. To any **non-owned car** with less than four wheels

19. To **Household Pets** that are injured or die from heat, dehydration, or exposure to weather or to other animals from any covered loss under Part IV.

20. To **car** parts and **equipment** that are illegal. There is also no coverage for parts and **equipment** that are installed at a location on the insured **car** that would make the use of such parts or **equipment** illegal. However, **we** will pay for

## Personal Auto Policy (continued)

the legal version of such parts or **equipment** if they are necessary for the safe operation of the insured **car**.

21. To **your insured car** or any **car** while that **car** is being used in a **Personal Car Sharing Program**, a **Commercial Ridesharing Program**, any **prearranged ride**, or a similar arrangement.

22. To **your insured car** due to **diminution in value**.

23. To **your insured car** while it is leased or rented to others.

E. **Additional Duties for Part IV - Damage to Your Car**

In addition to the terms and conditions of this policy a person seeking coverage under Part IV of this policy must also comply with the following provisions:

1. Take reasonable steps after loss to protect **your insured car**, or any **non-owned car**, and its **equipment** from further loss. **We** will pay reasonable expenses incurred to do this.

2. Notify the police within 24 hours or as soon as practicable if **your insured car** or any **non-owned car** is stolen.

3. Permit **us** to inspect and appraise the damaged property before it is repaired or disposed of.

F. **Payment of Loss**

1. **We** will pay the loss in money, or repair or replace damaged or stolen property.

   a. **We** may, at any time before the loss is paid or the property is replaced, return, at **our** expense, any stolen property either to **you** or to the address shown on the **Declarations Page** with payment for the resulting damage.

   b. **We** may keep all or part of the property at the agreed or appraised value.

   c. If **we** pay for loss in money, **our** payment will include, where required by law, the applicable sales tax and fees for the damaged or stolen property.

2. **We** may settle any loss with **you**, the owner, or the lienholder of the property shown on the **Declarations Page**.

G. **Limits of Liability**

1. **Our** limits of liability for an insured loss to **your insured car**, **non-owned car** or its **equipment** will not exceed the cost that is necessary to repair or replace the damaged or stolen property or parts with **like kind and quality parts** less an adjustment for physical deterioration and depreciation. The limits are also subject to all other adjustments set forth in this section.

2. The cost to repair or replace will be calculated based on the lowest of:

   a. The **Actual Cash Value** of the stolen or damaged property at the time of the loss, reduced by the applicable deductible; or

   b. The amount necessary to repair or replace the stolen or damaged property, reduced by the applicable deductible.

   Any amount payable by **us** to repair or replace damaged property or parts will be reduced by the cost of labor, parts, and materials to repair prior damage, deterioration and defects to the property or parts that had not been repaired prior to the loss.

3. The limits of liability shall be reduced by any amount of loss that has been paid under any other insurance that insured this same loss.

4. The most **we** will pay for:

   a. Loss to a **utility trailer** not owned by **you** or a **family member** is $500;

   b. Loss to **additional equipment** is a total of $1,000 for repair or replacement for any one loss, unless indicated otherwise on the **Declarations Page**. Multiple items of **additional equipment** lost or damaged in the same event are considered to be one loss;

   c. Loss to **Household Pets** for any one insured loss is $600 regardless of how many **Household Pets** were stolen, injured or killed as a result of that insured loss.

5. **We** will pay reasonable and necessary storage costs for **your insured car**, its **equipment** and **additional equipment** following an insured loss.

6. If **you** purchased coverage for **additional equipment** that is identified on a Customization Report, **our** limits of liability for loss to that covered **additional equipment** shall be the lesser of:

   a. The amount of coverage shown on the Customization Report;

   b. The **Actual Cash Value** of the stolen or damaged **additional equipment**; or

   c. The amount necessary to repair or replace that stolen or damaged **additional equipment**.

   The amount **you** receive will not include any reduction in the value of that **additional equipment** after it has been repaired, as compared to the value before it was damaged.

## Personal Auto Policy (continued)

7. If repair or replacement results in better than **like kind and quality parts**, **we** will not pay for the amount of the betterment. Betterment for which **you** will be responsible includes the value relating to the increase in the useful life of replaced parts that have a limited useful life and the increase in value from the repair of the prior damage. Any deductions that **we** take for betterment will be taken only for parts or a specific repair process normally subject to repair or replacement during the useful life of **your insured car**. Deductions will be limited to an amount equal to the proportion that the expired life of the part or specific repair process to be repaired or replaced bears to the normal useful life of that part or repair process.

8. If a loss to auto safety glass is repaired rather than replaced, the deductible applying to this coverage is waived. If the auto safety glass is replaced, the deductible applying to this coverage will remain in force.

9. Any payment **we** make will be reduced by the value of the salvage when **you** or the owner of the **car** retains the salvage.

10. No one will be entitled to duplicate payments for the same elements of loss.

11. Payments for loss covered under Part IV are subject to no more than one deductible for any one insured loss. If two or more deductibles apply to any one insured loss, only the lowest deductible will apply.

12. A **car** and attached **utility trailer** for which coverage is provided under this Part are considered one **your insured car**, and for any insured loss to such **car** **you** will only pay one applicable deductible.

H. **Preservation of Salvage**

If **we** retain the salvage after a loss, **we** have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

I. **No Benefit to Bailee**

This coverage shall not directly or indirectly benefit any carrier or other bailee for hire.

J. **Legal Action Against Us**

No legal action related to this policy or the claims that **you** have presented may be brought against **us** under Part IV unless filed within six (6) years of the date of the **accident**.

K. **Other Insurance**

If other insurance also insures the loss, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable insurance, self-

insurance, and/or protection limits or amounts regardless of source. However, any insurance **we** provide with respect to a **rental car**, **substitute car**, or non-owned **utility trailer** shall be excess over any other collectible insurance, self-insurance, and any other source of recovery applicable to the loss.

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance being provided under Part IV of this policy, the total amount payable among all such policies shall not exceed the limit of liability of the single policy providing the highest limit of liability.

L. **Appraisal**

If **we** and **you** do not agree on the amount of loss, then **we** and **you** may agree to an appraisal of the loss. If **we** and **you** agree to an appraisal, each party will select a competent appraiser and notify the other party in writing of the appraiser's identity within thirty (30) days of the request for appraisal. The two appraisers will select an umpire. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A written decision agreed to by any two will be binding.

Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

**We** and **you** do not waive any of our rights under this policy by agreeing to an appraisal.

## Part V - Duties After an Accident and General Conditions

A. **Duties After an Accident**

In addition to the terms and conditions of this policy, an insured person claiming any coverage under any Part of this policy must:

1. Upon **our** request at any time before or during the policy term, make any **car**, or **utility trailer** that **you** insure or intend to insure available for inspection by **us** to the extent permitted by law.

2. Refrain from voluntarily making any payment, assuming any obligation, or incurring any expenses except for bail bonds and first aid expenses for others.

3. Report all theft losses to the police within 24 hours or as soon as reasonably practicable.

4. As soon as reasonably practicable, inform **us** of any **accident** or loss and of all details, including the date

## Personal Auto Policy (continued)

and time it occurred, the location where it occurred, the facts and circumstances of the **accident**, the identity of persons involved, the license plate information of the **cars** involved, and injury and witness information.

5. Protect **your insured car** from further loss. **We** will pay reasonable expenses to guard against further loss. If **you** don't protect **your insured car**, further loss is not covered.

6. Cooperate with **us** and assist **us** in the investigation and settlement of any claim or defense of any claim or lawsuit. If **we** ask, that insured person must also help **us** obtain payment from anyone who may be jointly responsible for the **accident**.

7. Allow **us** to inspect and appraise the damaged property before it is repaired, destroyed or discarded.

8. Allow **us**, with **your** consent, to move **your insured car**, at **our** expense, to a storage facility of **our** choice. If **you** do not give **us your** consent, **we** will pay only the storage costs which would have resulted if **we** had moved **your insured car** to a storage facility of **our** choice.

9. Submit to statements and or examinations under oath as often as **we** reasonably require, separately and apart from others, and to sign the transcript.

10. Provide **us** with copies of any documents that **we** reasonably require at the time of the examination under oath and any other time, and allow the copying of any documents **we** or **our** designated representative requests. This includes producing any documents that **we** identify as being reasonable and necessary to investigate and process **your** claims. Such documents must be provided to **us** or **our** designated representative in a timely manner, and if requested, prior to an examination under oath.

11. Authorize **us** to obtain:
    a. Medical reports and records;
    b. Any documents **we** indicate are necessary to investigate and process **your** claim; and
    c. Event data recorders and/or sensing and diagnostic modules or any other recording device for the purpose of retrieving data following an **accident** or loss.

12. Provide any written sworn proofs of loss **we** require, including all details **we** may need to determine the amounts payable.

13. Send or provide **us**, as soon as reasonably practicable, copies of all legal papers **you** receive relating to any claim or suit.

B. **General Conditions**

1. **Policy Period and Territory**

   This policy applies only to **accidents** occurring during the policy period shown on the **Declarations Page** if the **accidents** occur within the United States, its territories or possession, Puerto Rico and Canada, or while **your insured car** is being shipped between their ports.

2. **Your Duty to Report Changed Circumstances**

   a. **Your** policy was issued in reliance on the information **you** provided **us** at time of application, including information concerning any **cars** and persons insured by the policy. **You** agree to cooperate with **us** in determining if the information **you** provided and upon which **we** relied to issue this policy is correct and complete. **You** agree by acceptance of this policy that all information shown on the **Declarations Page** of **your** policy and on the Application is accurate.

   b. **You** agree that if any information changes, is incorrect or incomplete, **you** will notify **us** as soon as reasonably practicable to change it. If **we** determine any information is incorrect or incomplete, **we** may change it. Based upon any new information **you** report or **we** may discover **we** may adjust **your** coverage and premium accordingly during the policy period. Any recalculation by **us** of **your** premium, or any changes **we** make to **your** coverage, based on new information acquired, will be made using the rules, rates and forms used in **your** state as of the date of the change.

   c. Some of the types of information **you** must notify **us** about include but are not limited to:

      (1) A change of **your** mailing address or the principal garaging of any **your insured car**;
      (2) New drivers residing in **your** household;
      (3) Any persons who become new regular users of **your insured car(s)**;
      (4) **You** or any **family member** obtains a driver's license or operator's permit;
      (5) Changes in the use of **your insured cars**; or
      (6) Changes in **your** discount eligibility.

DOCUMENT 1-1_9

## Personal Auto Policy (continued)

3. **Coverage Changes**

When **we** broaden coverage during the policy period without charge, the policy will automatically provide the broadened coverage when effective in **your** state. **We** may make other changes or replace this policy, to conform to coverage currently in use at the next policy period.

4. **Legal Action Against Us**

No legal action may be brought against **us** until there has been full compliance with all the terms and conditions of this policy. No person or organization has any right under this policy to bring **us** into any action brought to determine the liability of an insured person.

5. **Transfer of Your Interest**

Interest in this policy may not be assigned without **our** written consent. But, if the **named insured** on the **Declarations Page** dies, the policy will insure, until the end of the policy period:

a. Any **family member**;

b. The legal representative of the deceased **named insured** while acting within the scope of duties of a legal representative; or

c. Any person having proper custody of **your insured car** until a legal representative is appointed.

6. **Our Right to Recover Payment**

a. If **we** make a payment under this policy and the person to or for whom payment was made has a right to recover **damages** from another **we** shall be subrogated to that right. That person shall do:

(1) whatever is necessary to enable **us** to exercise **our** rights, and

(2) nothing after loss to prejudice **our** rights.

However, **our** rights in this paragraph do not apply under Part IV, against any person using **your insured car** with a reasonable belief that the person is entitled to do so.

b. If **we** make a payment under this policy and the person to or for whom payment is made recovers **damages** from another, that person shall:

(1) hold in trust for **us** the proceeds of the recovery; and

(2) reimburse **us** to the extent of **our** payment.

c. If **we** exercise **our** right to recovery against another, **we** will also attempt to recover any deductible

incurred by an insured person under this policy. **We** reserve the right to compromise or settle the deductible and property damage claims against the responsible parties for less than the full amount. **We** reserve the right to reduce reimbursement of the deductible by the proportion that the amount **we** recover bears to the total amount of **our** subrogated claim. **We** will also reduce reimbursement of the deductible by the proportionate share of the collection expenses including attorney fees incurred with **our** recovery efforts. **We** will not recover the deductible if **you** instruct **us** not to.

7. **Bankruptcy**

**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of any insured person.

8. **Termination or Reduction of Coverage**

a. **Cancellation or reduction of coverage**

This policy may be cancelled during the policy period as follows:

(1) The **named insured** shown on **your Declarations Page** may cancel by:

(a) Returning this policy to **us** or the **named insured's** agent; or

(b) Giving **us** or the **named insured's** agent advance notice of the date cancellation is to take effect.

(2) **We** may cancel, change the renewal date, or cancel or reduce all or any portion of any coverage under this policy for any reason if the notice is mailed within the first 59 days of the initial policy period.

(3) After this policy is in effect for 59 days, or if this is a renewal or continuation policy, **we** may cancel, change the renewal date, or cancel or reduce all or any portion of any coverage under this policy only for the reasons legally permitted by the state where **your** policy was issued.

(4) If **we** cancel or reduce all or any portion of any coverage, the notice **we** send **you** will describe that portion of coverage **we** are cancelling or reducing.

b. **Nonrenewal**

If **we** decide not to renew or continue this policy, **we** will mail notice to **you** at the address shown in **our**

## Personal Auto Policy (continued)

records. Notice will be mailed at least 30 days before the end of the policy period. If **your** policy is renewed, **we** may still cancel it at **our** option if grounds for cancellation existed before the effective date of the renewal.

c. **Automatic Termination**

(1) If **we** offer to renew or continue this policy and **you** or **your** representatives do not accept, this policy will automatically terminate at the end of the current policy period.

(2) Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

(3) If **you** obtain other insurance on **your insured car**, any similar insurance provided by this policy will terminate as to **your insured car** on the effective date of the other insurance.

(4) If **your insured car** is sold or transferred to someone other than **you** or a **family member**, any insurance provided by this policy will terminate as to that **your insured car** on the effective date of the sale or transfer.

d. **Other Termination Provisions**

(1) The effective date and time of cancellation stated in the notice shall become the end of the policy period.

(2) Any cancellation of the entire policy will be effective for all coverages for all persons and **cars** insured under this policy.

(3) The effective date and time stated on the notice for reductions of coverage or cancellation of a portion of the coverage shall be the effective date of that change or those changes. The notice will be part of the policy. It is an endorsement.

(4) If this policy is cancelled, **you** may be entitled to a premium refund. If **you** cancel, the refund will be computed at .90 of the pro rata unearned premium. If **we** cancel or reduce coverage, any refund due will be computed on a daily pro rata basis.

(5) **Our** making or offering to make a refund is not a condition of cancellation.

9. **Misrepresentation or Fraud**

a. This policy was issued in reliance on the information provided on **your** insurance application, including,

but not limited to information regarding the license and driving history of **you**; **family members**; all persons of driving age residing in **your** household; the description of the **cars** to be insured; the location of the principal place of garaging; and **your** place of residence.

b. **We** may void this policy if **you** or any insured person have engaged in fraudulent conduct or have concealed, omitted, or misrepresented any material fact or circumstance concerning the application, issuance, renewal or continuation of this policy.

c. **We** may void this policy or deny coverage for an **accident** if **you** or any insured person have concealed, omitted or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

d. Each and every statement of fact made by any insured person in the application or any subsequent application for insurance or renewal, which is made part hereof, is agreed to be material.

e. **We** may void this policy for fraud or misrepresentation even after the occurrence of an **accident**. This means that **we** will not be liable for any claims or **damages** that would otherwise be covered.

f. If **we** void this policy, it will be void from its inception (void ab initio), and no coverage will be provided whatsoever.

g. To the extent that **we** make payments to **you** under this policy and **our** subsequent investigation reveals **your** involvement in fraud or misrepresentation in the presentation of a claim, **you** must indemnify **us** for all payments made.

10. **Terms Conformed to Statutes**

a. This policy shall be deemed amended to conform to the statutes of the state listed in **your** application if any provision fails to conform to such statutes. Any dispute as to coverages or the provisions of this policy shall be determined and governed by the law of the state listed in **your** application as **your** residence.

b. Policy terms, which conflict with the laws of the state in which this policy issued, are hereby amended to conform to such laws.

## Personal Auto Policy (continued)

11. **Proof of Mailing**

    **We** may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

12. **Policy Fee**

    A Policy Fee applies to this policy, if set forth on the **Declarations Page**. The fees are fully earned and are not refundable, unless required by state law. However, if **we** cancel **your** policy during the initial policy period, policy fees will be refunded to **you** in full.

13. **Additional Benefits and Services**

    **We** may work with independent merchants to try to provide **you** with the best possible value for services and replacement of **your** property. If **we** are able to negotiate any benefits or discounts with these merchants, **we** may extend those benefits to **you** by advising **you** of their availability. **You** will have to contact any identified merchants yourself and deal directly with them. **We** would never provide any information about **you** to them. **You** are under no obligation to ever contact any of the merchants. **We** are not obligated to expand or continue to make available any such benefits.

14. **Policy Notices**

    **We** may mail or, unless prohibited by law, deliver policy notices to **you**. If a lienholder is named in this policy, any notices **we** give to the lienholder may be mailed or delivered. When mailed, the United States Postal Service or its licensed agents or vendors may forward such notices to an updated address per any change of address that **you** have presented to or filed with the United States Postal Service. In addition, **we** may update **our** policy records to reflect this updated address and/or **we** may address future policy notices to this updated address. Except where prohibited by law, a policy notice under this Policy Notices condition will be deemed "mailed" or "delivered" if it is delivered by electronic transmittal or facsimile.

15. **Payment**

    At the policy's inception, if **you** make a premium payment using a nonnegotiable instrument such as a check or debit card with insufficient funds, the policy is null and void and is not subject to the Cancellation provisions of the policy. If **you** make a premium payment for a renewal of **your** policy using a nonnegotiable instrument, **our** offer of policy renewal is deemed rejected by **you** and the policy terminated without renewal.

16. **Joint and Individual Interests**

    If there is more than one **named insured** on this policy, any **named insured** may cancel or change this policy. The action of one **named insured** will be binding on all persons provided coverage under this policy.

17. **Loss Payable Provisions**

    a.  It is agreed that at **our** option, any payment for damage to the **car** listed in this policy shall be paid as interest may appear to the **named insured** and the lienholder shown on the **Declarations Page**, or through the repair of the damaged **car**.

        (1) When **we** provide payment to the lienholder, the payment will be the lowest of the actual cash value of **your insured car** or the existing loan balance, whichever is less.

        (2) Any change in title or ownership of the **car**, or error in its description shall not void coverage afforded to the lienholder.

    b.  The policy does not insure **you** or any lienholder for **damages** due to:

        (1) conversion;

        (2) embezzlement;

        (3) secretion;

        (4) fraudulent acts;

        (5) material misrepresentation or omission; or

        (6) intentional damages

        by **you**, any **family member** or anyone acting under the direction of either of you.

    c.  When a payment is made to the lienholder, **we** are entitled to all the rights of the lienholder to the extent of such payment.

        (1) The lienholder shall do whatever is necessary to secure such rights.

        (2) No subrogation shall impair the right of the lienholder to recover the full amount of its claim.

    d.  **We** reserve the right to cancel this policy at any time as provided by its terms.

        (1) In case of cancellation or lapse **we** will give notice to the lienholder as required under the law.

        (2) Cancellation will terminate the policy and this agreement as to any interest of the lienholder.

## Personal Auto Policy (continued)

18. **Limited Material Damage Coverage in Mexico**

WARNING - LIMITED COVERAGE IN MEXICO - READ THIS WARNING CAREFULLY

A. **Car accidents** in Mexico are subject to the laws of Mexico only - NOT the United States of America.

1. With respect to **car accidents**, the laws of the United States and of Mexico are different. For example, in Mexico all **car accidents** are a criminal matter. In the United States, most **car accidents** are only a civil matter. If **you** do not have valid Mexican automobile liability insurance and **you** have an **accident**, **you** may spend time in a Mexican jail or have **your car** impounded.

2. This policy does not provide liability insurance in Mexico. **You** only have coverage for material damage to **your insured car**. It does not provide valid automobile liability coverage in Mexico. **You** should purchase valid automobile liability coverage from a licensed Mexican insurance company before driving into Mexico.

B. Limited Mexico Coverage

1. If **your insured car** includes Comprehensive Coverage and Collision Coverage as shown on the **Declarations Page**, then Comprehensive Coverage and Collision Coverage are extended on a limited basis when **your insured car** is within Mexico.

2. This limited coverage applies only when:

a. The loss occurs while **your insured car** is within 50 miles of the United States border;

b. **Your insured car** is in Mexico for infrequent trips that do not exceed five (5) consecutive days at any one time, and do not exceed twenty-three (23) days in any calendar month;

c. **Your insured car** is garaged only in the United States;

d. **Your insured car** is maintained, operated, driven or used in Mexico only by **you** or a **family member** who lives in the United States; and

e. **Your insured car** is returned to the United States after a loss for **our** inspection. Any cost for towing and transportation that is required to return **your insured car** to the United States for **our** inspection, or for salvage operations of the **car** while within Mexican territory, are not covered under this policy.

The insurance provided by this provision will be excess over any other collectible insurance.

19. **Car Sharing**

**You** must disclose in writing to **us your** participation as either a driver or **car** owner, in any **Personal Car Sharing Program**, **Commercial Ridesharing Program** or other similar arrangement. Failure to do so may result in the rescission, cancellation or nonrenewal of **your** policy.

## Special Provisions

The Company named on the **Declarations Page** has caused this policy to be signed by the officers shown below.

**Secretary**

**Vice President**

## Policy Endorsements



**FARMERS**
INSURANCE

---

### Safety Glass Deductible Buyback - Comprehensive Coverage (J6962 - 2nd Edition)

The following is added to **your** insuring agreement in Part IV - Damage to Your Car for **Comprehensive Coverage**:

If a premium for this coverage is shown on **your Declarations Page,** it is agreed that the deductible applying to **Comprehensive Coverage** is replaced by a $100 deductible for a covered loss to safety glass.

The following is added to Part IV - Limits of Liability:

**Our** limit of liability for loss to **your** safety glass is the amount necessary to replace the safety glass minus the $100 deductible.

93-6962   2nd Edition   2-15             This endorsement is a part of the policy. It changes the policy so please read it carefully. All
                                         other terms and conditions of the policy continue to apply.

---

# Policy Endorsements

**FARMERS**
**INSURANCE**

---

### Rental Reimbursement Coverage - Owned Car (J6961 - 2nd Edition)

If a premium is shown on **your Declarations Page** for Rental Reimbursement Coverage, with respect to **your car** that is involved in a covered loss, **we** will reimburse the actual expenses **you** incur for the daily rental rate and associated taxes resulting from **your** use of a **rental car** as a **substitute car**. This coverage applies when a covered loss exceeds the applicable deductible under **Comprehensive Coverage** or **Collision Coverage** in Part IV - Damage To Your Car.

**We** will not pay or reimburse expenses for:

1. gasoline;
2. maintenance; or
3. collision damage waiver insurance charges.

The following is added to **Part IV - Limits of Liability:**

1. The per day limit shown on the **Declarations Page** for rental reimbursement coverage is the most **we** will pay for daily reimbursement for use of a **rental car**.
2. The reimbursement for any one loss shall not exceed the reasonable amount of rental expense actually incurred.

The following Conditions are added to Part IV of **your** policy:

1. The damaged **car** must be continuously withdrawn from normal use due to a covered loss for a period in excess of 24 hours.
2. The time period for reimbursement of rental expense begins on the first day rental expense is incurred. If the damaged **car** is drivable after the loss, coverage starts the day the **car** is taken to a garage to begin repairs.
3. The time period for reimbursement of rental expense ends at the earlier of:
   a. 30 days after Rental Reimbursement Coverage has been in effect;
   b. Upon completion of repairs to the damaged **car**;
   c. When **we** make an offer of settlement on a total loss basis; or
   d. Upon replacement of the **car**.

---

93-6961   2nd Edition   2-15          This endorsement is a part of the policy. It changes the policy so please read it carefully. All
                                      other terms and conditions of the policy continue to apply.

---

**farmers.com**

PLACE STICKER AT

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Ar

Farmers Insurance
P.O. Box 268994
Oklahoma City, OK  73126

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

different from item 1?  ☐ Yes
ery address below:     ☐ No



9590 9402 5306 9154 1842 71

2. Article Number (Transfer from service label)

7019 0700 0001 0003 0419

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
Mail Restricted Delivery
00)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

RECEIVED IN OFFICE
APR 13 2020
DEBRA KIZER
Clerk, Circuit Court Madison Co., AL

PS Form 3811, July 2015 PSN 7530-02-000-9053     (U) 2020 900473- 000   Domestic Return Receipt

DOCUMENT 6

USPS TRACKING #



9590 9402 5306 9154 1842 71

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Debra Kizer, Circuit Clerk
Civil Division
Madison County Courthouse
100 North Side Square
Huntsville, AL 35801-4820
256-532-3622



| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | Defendant's copy<br>**SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>47-CV-2020-900473.00 |

**IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA**
**AUDREY ALSTON ET AL V. FARMERS INSURANCE**

NOTICE TO: FARMERS INSURANCE, P O  BOX 268994, OKLAHOMA CITY, OK 73126

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS  YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S),
MITCHELL JOHN HOWIE

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE  107 NORTH SIDE SQUARE, HUNTSVILLE, AL 35801

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL**
**PROCEDURE TO SERVE PROCESS:**

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of AUDREY ALSTON pursuant to the Alabama Rules of the Civil Procedure

*[Name(s)]*

| 03/30/2020 | /s/ DEBRA KIZER | By:  *fe* |
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested

/s/ MITCHELL JOHN HOWIE

*(Plaintiff's/Attorney's Signature)*

**RETURN ON SERVICE**

☐ Return receipt of certified mail received in this office on _____

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

in _____ County,

*(Name of Person Served)*          *(Name of County)*

Alabama on _____

*(Date)*

_____

*(Address of Server)*

_____          _____

*(Type of Process Server)*          *(Server's Signature)*

_____          _____

*(Server's Printed Name)*          *(Phone Number of Server)*

DOCUMENT 2



ELECTRONICALLY FILED
3/30/2020 1:38 PM
47-CV-2020-900473.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

## IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

| | | |
|---|---|---|
| AUDREY ALSTON and | ) | |
| IOLA GOODSON | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| VS. | ) | CIVIL ACTION NO.: CV20-_____ |
| | ) | |
| | ) | |
| FARMERS INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT

COMES NOW AUDREY ALSTON and IOLA GOODSON, Plaintiffs and state the following cause of action:

### GENERAL ALLEGATIONS

1. Plaintiffs, AUDREY ALSTON and IOLA GOODSON (hereinafter "Ms. Alston" or "Plaintiffs"), are residents of Madison County, Alabama and are over the age of nineteen (19) years.[1]

2. Defendant, FARMERS INSURANCE COMPANY, is a corporation, registered and doing business in Madison County, Alabama, with their registered agent having an address of 641 South Lawrence Street, Montgomery, Al, 36104.

3. Plaintiffs contracted with FARMERS INSURANCE COMPANY to issue an automobile insurance policy in Madison County, Alabama. The Plaintiffs faithfully paid all premiums required under the contract and otherwise performed Plaintiffs' obligations under the contract.

4. On or about January 26th, 2018, the Plaintiff, AUDREY ALSTON, was traveling on Triana Boulevard in Madison County, Alabama, when the tortfeasor, Tiarra Reed (***who has already settled for policy limits and for which the Defendant waived their right to subrogation***), failed to yield the right of way and struck the vehicle in which Plaintiff, AUDREY ALSTON, was driving causing her severe personal injuries and damage to her automobile.

5. As a proximate consequence of said negligence and/or wantonness of the Tortfeasor, Tiarra Reed, Ms. Alston suffered physical injuries, physical pain and mental anguish, lost wages, lost employment, permanent scarring and her car was a total loss.

---

[1] Ms. Goodson is the mother of Ms. Alston and the primary insured under the policy and Ms. Alston is an additional insured under the policy.

DOCUMENT 2

6. As a further proximate consequence of said negligence, Ms. Alston was caused to incur medical expenses in an effort to heal and treat the injuries she had and lost additional wages and her employment.

7. Plaintiffs' insurance company, FARMERS INSURANCE COMPANY has failed to offer to pay the damage from the uninsured motorist after numerous written notices and telephone calls to FARMERS INSURANCE COMPANY to adequately pay Ms. Alston for her losses.

8. At the time and place of the wreck complained of, Ms. Alston was covered under a policy of insurance issued by FARMERS INSURANCE COMPANY, insuring herself against injury and damage caused by an uninsured/underinsured motorist.

9. Ms. Alston suffered injury, loss of enjoyment of life, lost wages, lost her employment and additional damages as a proximate result of the negligence and/or wantonness of tortfeasor, Tiarra Reed, and is therefore entitled to recover uninsured/underinsured motorist benefits.

10. As of the date of this lawsuit, FARMERS INSURANCE COMPANY has refused to adequately pay Ms. Alston for the bodily injuries she has suffered and the compensatory damages she is due under the UIM policy with Farmers Insurance.

## COUNT 1-BREACH OF CONTRACT

11. The Plaintiffs reallege and incorporate herein by reference Paragraphs 1-10 above.

12. The automobile insurance policy issued by FARMERS INSURANCE POLICY to Plaintiffs in consideration of premiums paid constituted a contract pursuant to which Plaintiffs were entitled to Uninsured/Underinsured Motorist coverage in accordance with Ala. Code Section 32-7-23.

13. The denial of Ms. Alston's claim contravened the express terms of the insurance contract and Alabama law and thus constituted a bad faith breach of the contract.

## COUNT II-BAD FAITH-FAILURE TO PAY

14. The Plaintiffs reallege and incorporate herein by reference Paragraphs 1-13 above.

15. After counsel for Ms. Alston made FARMERS INSURANCE COMPANY aware of the policy and made demand for payment, FARMERS INSURANCE COMPANY failed to make an adequate effort to investigate the merits of the claim by failing to admit her lost wages and medical bills of Fifteen Thousand Six Hundred and Ninety-Seven and 98/100 Dollars ($15,697.98.)

16. Had FARMERS INSURANCE COMPANY adequately investigated the claim, it would have discovered that Plaintiffs have a valid claim in accordance with the facts, the policy, and the law in Alabama and that FARMERS INSURANCE COMPANY was liable well in excess of Fifteen Thousand Six Hundred and Ninety-Seven and 98/100 Dollars ($15,697.98.)

17. The failure by FARMERS INSURANCE COMPANY to adequately investigate the claim constituted a willful and intentional violation of good faith and fair dealing.

18. Ms. Alston alleges that FARMERS INSURANCE COMPANY knew or should have known that they were liable well in excess of the Fifteen Thousand Six Hundred and Ninety-Seven and 98/100 Dollars ($15,697.98) pursuant to the underinsured motorist insurance coverage for damages but have failed to pay for almost two years.

19. FARMERS INSURANCE COMPANY'S apparent reliance on the contract provisions without further investigation was a bad faith denial of the claim as evidenced by their refusal to offer an amount adequate enough to compensate Ms. Alston for medical bills, lost wages, and loss of employment and pain and suffering.

## DAMAGES

20. Ms. Alston has suffered economic damages as a result of the Defendant's conduct.  She requests that the fact finder award appropriate actual damages to compensate her for her loss under the policy including the actual cash amount set forth in the policy plus interest.

21. Ms. Alston further requests punitive damages for FARMERS INSURANCE COMPANY'S bad faith failure to pay under the policy.  Punitive damages are appropriate to punish FARMERS INSURANCE COMPANY for its reprehensible conduct and to deter future insurance companies from engaging in similar misconduct.  Ms. Alston requests all other damages supported under the law including but not limited to pre-judgment and post-judgment interest, costs of court, and all other damages supported by the evidence and the law.

WHEREFORE, Plaintiffs request One hundred thousand dollars ($100,000.00) (which is the policy limits amount of underinsured motorist insurance coverage provided for in the insurance contract) in compensatory damages and requests such punitive damages as justice may require.

## JURY DEMAND

***The Plaintiffs hereby make their demand for a trial by jury of all the issues in this case.***

Respectfully Submitted,

*/S/ Mitchell J. Howie*
Mitchell J. Howie
Attorney for Plaintiffs
107 North Side Square
Huntsville, Al 35801
Bar #: ASB-6533-I60H
Phone #: 256-533-8074
mhowie@mitchellhowie.com

DOCUMENT 2

### CERTIFICATE OF SERVICE

I hereby certify that I have caused the following to be served by process server on all necessary parties, and/or by certified mail, and/or served a copy of the foregoing upon all necessary parties by electronic filing through AlaFile and/or by e-mail on March 30th, 2020

Respectfully Submitted,

/S/ Mitchell J. Howie
Mitchell J. Howie